**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

Roy Franklin BLEVINS, and Bonnie Blevins, as Next Friend for Michelle and Michael Blevins, Minors, Appellees.

No. 2–02–263–CV.

Court of Appeals of Texas,
Fort Worth.

March 13, 2003.

Rehearing Overruled April 24, 2003.

John Cornyn, Attorney General of Texas, Howard G. Baldwin, Jr., First Assistant Attorney General, Jeffrey S. Boyd, Deputy Attorney General for Litigation, Grady Click, Assistant Attorney General, Chief, Transportation Division, Ronald E. Garner, Assistant Attorney General, Transportation Division, Austin, for appellant.

Banner, Briley & White, L.L.P., Steve Briley, Harold White, Wichita Falls, for appellee.

PANEL A: DAY, LIVINGSTON and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

In this interlocutory appeal, the Texas Department of Transportation (TxDOT) challenges the trial court's denial of its plea to the jurisdiction, raising one point: the trial court erred by refusing to dismiss the case for want of jurisdiction because Appellees failed to give the formal or actual notice required by Texas Civil Practices and Remedies Code Section 101.101. We reverse and render.

## FACTS

Appellees' complaint arises from a fatal injury to Ernest Blevins. On August 1, 1996, Blevins lost control of a 25,000 pound propane truck after hitting a concrete bridge abutment. When the truck struck the abutment, it traveled up and along the concrete rail and came to a stop at some point after passing the opposite end of the bridge. The force of the accident ejected Blevins from the vehicle, fatally injuring him.

Appellees contend that TxDOT's failure to flush out its metal guard fence constituted an actionable maintenance defect. Appellees theorize that if the guard fence had been fastened so as to be flush with the inside face of the top of the concrete rail, then the rear tire might not have ridden up, or at least not quite so high, and Blevins might have had a better chance to regain control of his truck.

TxDOT filed a plea to the jurisdiction stating that, because Appellees failed to follow the rules in the Texas Tort Claims Act that authorize suit, the trial court did not have jurisdiction over TxDOT due to a waiver of sovereign immunity. The trial court denied the plea to the jurisdiction, and TxDOT filed this interlocutory appeal.

## STANDARD OF REVIEW

We review the question of whether a trial court has subject matter jurisdiction de novo as a legal question. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *Denton County v. Howard,* 22 S.W.3d 113, 118 (Tex. App.-Fort Worth 2000, no pet.). A plea to the jurisdiction contests the authority of a court to determine the subject matter of the cause of action. *Dolenz v. Tex. State Bd. of Med. Examiners,* 899 S.W.2d 809, 811 (Tex.App.-Austin 1995, no writ). The plea raises incurable defects in jurisdiction which are shown on the face of a plaintiff's

pleadings, taking the pleadings' allegations as true. *Id.* (*citing Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 331 S.W.2d 910, 917 (1960)). If well taken, the trial court must sustain the plea and dismiss the cause. *Id.*

## DISCUSSION

■■■ Texas has long recognized that sovereign immunity, unless waived, protects the State, its agencies, and its officials from lawsuits for damages. *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex.2002). Under the Texas Tort Claims Act, the Legislature has waived sovereign immunity only in certain limited and narrow circumstances. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex.1996). Section 101.025 of the Act provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter." TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1997).

■■■ The Texas Supreme Court has held that, "[o]nce the plaintiff invokes the procedural devices of the Texas Tort Claims Act, to bring a cause of action against the State, then he is also bound by the limitations and remedies provided in the statute." *State Dep't of Highways & Pub. Transp. v. Dopyera*, 834 S.W.2d 50, 54 (Tex.1992). To avoid dismissal for lack of subject matter jurisdiction, a plaintiff must fully comply with all the provisions of the Act. *Putthoff v. Ancrum*, 934 S.W.2d 164, 173 (Tex.App.-Fort Worth 1996, no writ).

The dispute in this case surrounds whether Appellees gave formal notice of their intent to sue TxDOT or whether TxDOT had actual notice of Appelles' claim within the six months that section 101.101 of the civil practices and remedies code requires. This section states, "A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that

the incident giving rise to the claim occurred. The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (Vernon 1997).

In the present case, TxDOT asserts that Appellees gave no notice of the claim until nearly two years had elapsed. Appellees agree that they never gave formal notice of the claim to TxDOT, but contend that the agency had actual notice of a possible claim under Section 101.101(c). Section 101.101(c) states that "[t]he notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred...." TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1997). Appellees contend that TxDOT had actual notice of the possible claim, because a lethal accident occurred and TxDOT had a representative at the scene of the accident.

Appellees claim to base their interpretation on the plain language of section 101.101. They point to the fact that we have determined in earlier cases that the statute is unambiguous. *See State v. Kreider*, 44 S.W.3d 258, 262 (Tex.App.-Fort Worth 2001, pet. denied) ("We have previously recognized that the language contained in this particular notice provision is plain and unambiguous."). Appellees contend that the plain meaning of the act shows that, once a fatality has occurred, the State has actual notice of possible culpability.

The supreme court has interpreted the requirements for actual notice under section 101.101. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). The court in *Cathey* stated that actual notice under 101.101(c) requires the State to have knowledge of (1) a death, injury, or prop-

erty damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *Id.; Dallas–Fort Worth Int'l Airport Bd. v. Ryan,* 52 S.W.3d 426, 428–29 (Tex.App.-Fort Worth 2001, no pet.); *Benavides v. Dallas–Fort Worth Int'l Airport Bd.,* 946 S.W.2d 576, 579 (Tex.App.-Fort Worth 1997, no writ).

Appellees claim that they have shown evidence that TxDOT had knowledge of all three of these requirements. The facts show that while Blevins drove a propane truck on a rural route, he struck the side of a bridge causing his truck to overturn and eject him. The truck began to leak propane after the accident, but eventually the safety seals in the tank sealed the leak. Jess Wood, acting on behalf of TxDOT, investigated the accident. His job description required him to be present at accidents where hazardous chemicals had been spilled and to investigate possible safety and liability concerns on Texas roads. Appellees claim that, through the investigation, TxDOT became aware of Blevins's death and of TxDOT's possible culpability.

■ A TxDOT employee called Wood to the scene of the accident in order to assess the damage done to the bridge due to the accident, to assess a possible hazardous condition due to a leak of propane from the truck, and to determine the cause of the accident. When Wood arrived at the scene of the accident, emergency personnel had already removed the truck. He determined that the damage done to the bridge did not affect its integrity and that no safety risk existed. The police report, from an officer at the scene, indicated that driver inattention had caused the accident and that the driver had died in the wreck. We agree with Appellees that the evidence shows that TxDOT knew of the accident and of Blevins death, but we do not agree

that Wood's investigation showed that TxDOT might be culpable for the accident.

The evidence showed that driver inattention caused the wreck. Wood did not question any witnesses to the accident and only received the police report of the accident once Appellees filed suit in the case. He never reported the case to any supervisors, which TxDOT procedures require in cases where a potential for liability exists. All of the facts show that TxDOT was unaware of any possible culpability for the accident.

We have held that the purpose of the notice requirement is to "assure prompt reporting of claims so that the governmental unit can gather the necessary information to guard against unfounded claims, settle claims, and prepare for trial." *See Benavides,* 946 S.W.2d at 578; *see also Cathey,* 900 S.W.2d at 341; *City of Houston v. Torres,* 621 S.W.2d 588, 591 (Tex. 1981). We based this prior holding on the Supreme Court's decision in *Cathey.*

In *Cathey,* the Booths alleged that a doctor failed to perform a cesarean section on a pregnant woman in time to save the baby's life. *Cathey,* 900 S.W.2d at 342. The Booths did not provide the hospital with formal notice that they intended to sue, but they contended that the hospital had actual notice under section 101.101(c). The Booths based this contention on the fact that the hospital's records indicated that the baby had died, and the nature of the death also showed possible negligence on the part of the doctors. *Id.* The Texas Supreme Court held that this information did not impute actual notice to the hospital. *Id.* The court stated that "[t]he interpretation of section 101.101(c) urged by the Booths would eviscerate the purpose of the statute, as it would impute actual notice to a hospital from the knowledge that a patient received treatment at its facility

or died after receiving treatment." *Id.* at 341.

■ In this case, if we were to hold that TxDOT had actual notice because it had knowledge of the fatal accident and had an employee at the scene of the accident, we would effectively eliminate the notice requirement of section 101.101 for all traffic accidents. Anytime a TxDOT employee went to the scene of an accident where a death occurred or property was damaged, our holding would impute actual notice to the State. This would frustrate the purpose of the notice requirement. *Id.*

We hold that TxDOT did not have formal or actual notice of its possible culpability. Without formal or actual notice, the Texas Tort Claims Act did not authorize the waiver of sovereign immunity, and the trial court lacked subject matter jurisdiction over the case. We sustain TxDOT's sole point on appeal.

### CONCLUSION

Having sustained TxDOT's sole point, we reverse the trial court's denial of the plea to the jurisdiction and render judgment dismissing the suit against TxDOT.