IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
02-0894
════════════
 
The 
University of 
Texas
Southwestern 
Medical Center at Dallas, 
Petitioner,
 
v.
 
Donna 
Loutzenhiser, as Next Friend 
of
Stephen 
Luke Loutzenhiser, a Minor, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fifth District of Texas
════════════════════════════════════════════════════
 
 
Argued January 7, 2004
 
 
Justice Hecht delivered the opinion of 
the Court, joined by Chief Justice 
Phillips, Justice Owen, Justice Jefferson, Justice Wainwright, and Justice Brister.
 
Justice O=Neill filed a concurring opinion, 
joined by Justice Schneider and Justice Smith.
 
 
The 
Texas Tort Claims Act provides that A[s]overeign immunity to suit is waived and abolished to the 
extent of liability created by [the Act].@[1]  Section 101.101(a) of the Act 
states:
 
A governmental unit is entitled to receive notice of a claim 
against it under this chapter not later than six months after the day that the 
incident giving rise to the claim occurred.  The notice must reasonably 
describe:
 
(1)       the damage 
or injury claimed; 
(2)       the time 
and place of the incident; and 
(3)       the 
incident.[2]
 
Section 
101.101(c) makes this requirement inapplicable Aif 
the governmental unit has actual notice . . . that the claimant has 
received some injury@.[3]  In this case we hold that the plaintiff 
did not give notice within the six-month period as required, that lack of notice 
is a complete defense to suit but does not deprive the court of subject matter 
jurisdiction, and that the defendant did not waive its complaint of no notice by 
delaying to raise it.  Accordingly, 
we modify the judgment of the court of appeals and affirm.[4]
I
Donna 
Loutzenhiser=s 
son Stephen was born with a severely deformed left hand which she claims was 
caused by a prenatal diagnostic test performed by a governmental unit C 
the University of Texas Southwestern Medical Center at 
Dallas[5] 
C 
more than six months earlier in her pregnancy.  The test, a chorionic villus sampling 
(CVS), involves inserting a needle through 
the uterus into the chorion C 
the section of the placenta providing the fetus with nutrients via its blood 
supply C 
and removing a part of it for chromosomal testing.  Limb reduction is a known risk of this 
procedure, particularly if performed early in a pregnancy.  The first attempt, on January 21, 1992, did not 
collect the proper tissue, but a second procedure performed a week later 
did.  Stephen was born on August 15, 
and seventeen days later, his father notified the Medical Center of Stephen=s 
birth defect.  In December 1994, 
Loutzenhiser and two other mothers, individually and 
on behalf of their respective children, sued the 
Medical 
Center alleging that its 
CVS testing caused birth defects.
In 
August 1996, one year and eight months after suit was filed, the Medical Center 
moved for summary judgment in part on the ground that its immunity from suit had 
not been waived under the Tort Claims Act because the plaintiffs had failed to 
give the six-month notice required by section 101.101(a), and therefore the 
court lacked jurisdiction over the case.  
Several months later, the trial court granted the motion as to all of the 
plaintiffs except Stephen.[6]  At the time, the 
Medical 
Center could not appeal a refusal to 
dismiss a suit for want of jurisdiction based on sovereign immunity,[7] 
but two individual defendants could and did take an interlocutory appeal from 
the denial of their motion for summary judgment based on immunity.[8]  That appeal ended in April 2001.[9]  In July, the trial court set a trial 
date in February 2002.
In 
December 2001, seven weeks before trial and seven years after suit was filed, 
the Medical 
Center filed a plea to the 
jurisdiction, asserting as it had in its earlier motion for summary judgment 
that the court lacked jurisdiction because Loutzenhiser had not given notice as required by section 
101.101(a).  The 
Medical 
Center also asserted that Loutzenhiser had not pleaded a claim involving the use of 
tangible personal property within the Tort Claims Act=s 
waiver of immunity.[10]  The 
Medical 
Center cited new authority but also 
candidly acknowledged that it had filed the plea so that it could take an 
interlocutory appeal from an adverse ruling C 
a right created in 1997[11] 
that it did not have when its motion for summary judgment was denied C 
further delaying trial of the case.  
The trial court treated the notice argument as a motion to reconsider its 
denial of the motion for summary judgment, which it denied, and treated the 
no-use-of-property argument as a special exception, which it sustained.  Alternatively, the court held that the 
Medical 
Center had waived both arguments by 
waiting until the eve of trial to raise them and ordered that the plea be 
struck.
As 
promised, the Medical 
Center appealed.[12]  The court of appeals affirmed, holding 
as it had previously that the lack of notice required by section 101.101(a) does 
not deprive a court of jurisdiction over a claim.[13]  The court of appeals also held that the 
trial court had properly treated its no-use-of-property argument as a special 
exception and did not address the 
Medical 
Center=s 
contention that it had not waived its notice argument by delay.[14]
The 
Medical 
Center filed a petition for review 
limited to the notice and waiver issues, which we granted.[15]  We have jurisdiction over this 
interlocutory appeal[16] 
because the courts of appeals are in conflict over whether a court has 
jurisdiction over a claim, notice of which has not been given as required by 
section 101.101(a).[17]
II
We 
first consider whether Loutzenhiser gave notice as 
required by section 101.101(a).
The 
Medical 
Center argues that Loutzenhiser was required to notify it of Stephen=s 
claim that he had been injured by the CVS 
within six months of the date the procedure was performed, while Stephen was 
still in utero.  Loutzenhiser 
argues that to require notice on behalf of a fetus would violate constitutional 
guarantees of due process, equal protection, and open courts.  Loutzenhiser, 
according to her brief, Atakes 
no position with respect to the rights of minors in general regarding the notice 
provisions of the [Tort Claims] Act,@ 
and thus we limit our consideration to the effect of the notice requirement on 
the rights of the person injured in utero.  We need not reach Loutzenhiser=s 
constitutional arguments because we disagree with the 
Medical 
Center=s 
reading of the statute.
Section 
101.101(a) requires Anotice 
of a claim . . . not later than six months after the day that the 
incident giving rise to the claim occurred.@[18] 
 As we have stated, Athe 
longstanding common law rule [is] that the rights of a fetus [are] contingent on 
live birth.@[19]  Under this rule, Stephen legally had no 
claim against the Medical 
Center before he was born, even if 
his injury had been manifest when the CVS was 
performed (it was not).  The 
Medical 
Center argues that Athe 
incident giving rise to the claim@ 
was the CVS, but the 
CVS was only an incident C 
one of two C 
giving rise to the claim.  The other 
such incident, and one equally necessary to the existence of the claim, was 
Stephen=s 
live birth.  If the notice period 
ran from the CVS, the statute required notice 
of a nonexistent claim.  ACourts 
should not read a statute to create such an absurd result.@[20]  We decline to do so here when there is a 
reasonable alternative construction of the statutory language.  Because Stephen=s 
live birth was an incident giving rise to his claim, and one essential to the 
existence of the claim, we hold that the six-month period for giving notice 
began when Stephen was born.
The 
Medical 
Center argues that this construction 
of section 101.101 is inconsistent with our decision in Brown v. Schwarts, where we held that limitations on a claim for 
negligent prenatal treatment began to run when the treatment was completed.[21]  But the controlling statute in 
Brown was materially different.  
There, the statute of limitations prescribed that a claim for negligent 
medical or health care treatment be brought within two years of the date the 
treatment was completed A[n]otwithstanding any other law@.[22]  The statute did not require the claim to 
be in existence when limitations began to run, something that we acknowledged 
could yield harsh results in certain circumstances.[23]  But the two-year limitations period, 
even though it  began running when 
prenatal care was rendered, could not operate to bar the child=s 
claim before it came into existence because the limitations period was much 
longer than the gestation period.  

The 
Medical 
Center argues that even if the notice 
period did not begin to run until Stephen was born, it did not receive notice of 
his claim until more than two years later when Loutzenhiser filed suit.  Loutzenhiser 
argues that Stephen=s 
father=s 
telephone call to the Medical 
Center provided the required notice, 
but it clearly did not.  The only 
evidence of the substance of that call was Stephen=s 
father=s 
testimony as follows:
 
I called after he was born to inform them that he had 
C 
the situation with his hand C 
he had no fingers, thinking that they would want to be made aware of that.  The reason that I thought they may want 
to be made aware of that is because I thought it would be relevant to them, and 
that I had read in June or July a Newsweek article that said that 
CVS possibly 
causes limb reduction C 
is, I believe, the term that it used.  
And since it happened to my son, I thought that they would want to know 
about it. . . .  [A]nd at that time I was told that it didn=t 
have anything to do with the test, and they didn=t 
act interested in finding out about it.  
And I said, AWould 
you like some information for your records?@, 
and they never followed up on it.
 
Stephen=s 
father thought the call lasted about five minutes, and he could not recall with 
whom he spoke.  The most that can 
fairly be said from his testimony is that the 
Medical 
Center received notice from 
Stephen=s 
father that Loutzenhiser had had a 
CVS procedure and that Stephen had been born 
with a limb reduction.  It is not 
clear that the Medical 
Center was told that it had performed 
the CVS procedure; certainly it was not told 
the time.  More importantly, the 
Medical 
Center had no Anotice 
of a claim@, 
as section 101.101(a) requires.  
Stephen=s 
father stated only that he thought Athey 
would want to be made aware@ 
of Stephen=s 
deformity Afor 
[their] records@. 

Loutzenhiser argues that even if the 
Medical 
Center did not receive the notice 
required by section 101.101(a), it had actual notice which, under section 
101.101(c), made the notice requirement in section 101.101(a) inapplicable.  But actual notice that an injury has 
occurred is not enough to satisfy section 101.101(c); as we hold today in 
another case, a governmental unit must also have Aa 
subjective awareness that its fault produced or contributed to the claimed 
injury.@[24]  There is no evidence that before suit 
was filed the Medical 
Center was ever subjectively aware, 
either from Stephen=s 
father=s 
telephone call or otherwise, that it was at fault for Stephen=s 
deformity, as Loutzenhiser eventually alleged.  Stephen=s 
father=s 
testimony suggests that the Medical 
Center had no such subjective 
awareness.
We 
therefore conclude that Loutzenhiser was required to 
give notice under section 101.101(a) and did not do so.
III
The 
Medical 
Center argues that notice of a claim 
under section 101.101(a) is a condition of the waiver of the government=s 
immunity from suit under the Tort Claims Act.  We have held that a court lacks subject 
matter jurisdiction over a suit barred by immunity.[25]  Thus, the 
Medical 
Center argues, the notice required by 
section 101.101(a) is jurisdictional.  
As noted above, the courts of appeals are divided on whether this notice 
provision is jurisdictional.[26]
In 
Dubai Petroleum Co. v. Kazi, we concluded that 
any inquiry into whether the Legislature intended a particular statutory 
requirement to be jurisdictional as opposed to mandatory[27] 
must be conducted in light of Athe 
longstanding principle that subject-matter jurisdiction is a power that >exists 
by operation of law only, and cannot be conferred upon any court by consent or 
waiver=@.[28]  Not only may an issue of subject 
matter jurisdiction Abe 
raised for the first time on appeal by the parties or by the court@,[29] 
a court is obliged to ascertain that subject matter jurisdiction exists 
regardless of whether the parties have questioned it.[30]  Even after all proceedings have long ago 
come to an end:
 
a judgment will never be considered final if the court lacked 
subject‑matter jurisdiction.  
AThe 
classification of a matter as one of [subject‑matter] jurisdiction 
. . . opens the way to making judgments vulnerable to delayed attack 
for a variety of irregularities that perhaps better ought to be sealed in a 
judgment.@[31]
 
The 
failure of a non-jurisdictional requirement mandated by statute may result in 
the loss of a claim, but that failure must be timely asserted and compliance can 
be waived.  The failure of a 
jurisdictional requirement deprives the court of the power to act (other than to 
determine that it has no jurisdiction), and ever to have acted, as a matter of 
law.  Since the Legislature is bound 
to know the consequences of making a requirement jurisdictional, one must ask, 
in trying to determine legislative intent, whether the Legislature intended 
those consequences.  In 
Dubai, we held that the 
Legislature did not intend the statutory requirements for suing in 
Texas for an injury or death that 
occurred in a foreign country to be jurisdictional and therefore subject to 
being raised at any time.[32]  We follow the same analysis here.
We 
start with the statutory language.  
The language of section 101.101(a) is clearly mandatory, stating as it 
does that A[a] 
governmental unit is entitled to receive notice@.[33]  The Code Construction Act instructs that 
A>[i]s entitled to= 
creates or recognizes a right.@[34]  Given this meaning, section 101.101(a) 
gives governmental units a right to notice on which they can insist, but it does 
not specify the consequences if that right is denied.  Can a governmental unit waive its right 
to notice, or is notice essential to a waiver of immunity?  Before recodification of the Tort Claims Act in 1985,[35] 
which was intended to be Awithout 
substantive change@,[36] 
the six-month notice provision required that Aany 
person making a claim hereunder shall give notice@,[37] 
thereby indicating that the claimant had a duty to give notice.[38]  But like the recodified version, the former statute did not state the 
consequences for breach of the duty to notify.  By contrast, according to the 
conventions of the Code Construction Act, A>[m]ust= 
creates or recognizes a condition precedent@,[39] 
at least suggesting that a requirement could be jurisdictional.  The use of Ais 
entitled to@ 
rather than Amust@ 
C 
which was surely an intentional choice by the codifiers in deciding to abandon 
Ashall@ 
C 
is therefore some indication that the Legislature did not intend notice to be 
either a condition precedent to waiver of immunity or jurisdictional.
One 
indicator of legislative intent is a statute=s 
purpose.[40]  As noted above, the purpose of the 
notice requirement in section 101.101 is Ato 
ensure prompt reporting of claims in order to enable governmental units to 
gather information necessary to guard against unfounded claims, settle claims, 
and prepare for trial.@[41]  We do not see how this purpose is served 
by allowing lack of notice to be raised at any time, for the first time on 
appeal, or even later, long after the litigation has ended.  On the contrary, it appears that if a 
governmental unit is to avoid litigation to which it should not be subjected 
because of lack of notice, it should raise the issue as soon as possible.  Moreover, if in a particular case a 
governmental unit were not prejudiced by lack of notice and chose to waive it, 
we do not see how the statutory purpose would thereby be impaired.
But 
the Medical 
Center argues that it is the right to 
take an interlocutory appeal from a trial court=s 
refusal to dismiss the case, not the right to raise lack of notice at any time, 
that avoids the burden of litigation when immunity from suit has not been 
waived.  In creating the right of a 
governmental unit to appeal from the denial of a plea to the jurisdiction, the 
Legislature clearly assumed that at least some requirements of the Tort Claims 
Act=s 
waiver of immunity are jurisdictional, but we find nothing to indicate that the 
six-month notice requirement was one of them.  Certainly, not all requirements are 
jurisdictional.  For instance, 
section 101.102(a), adjacent section 101.101, mandates that A[a] 
suit under this chapter shall be brought in state court in the county in which 
the cause of action or a part of the cause of action arises.@[42]  We have previously held in Brown v. 
Owens that filing suit in the wrong county does not deprive the court of 
subject matter jurisdiction.[43]  The 
Medical 
Center does not challenge our holding 
in Brown but attempts to distinguish it by arguing that if the failure of 
a statutory requirement can be cured C 
in Brown, by transfer of venue C 
the requirement should not be jurisdictional.  Only if the failure of a statutory 
requirement cannot be cured C 
giving notice within six months after the six months has passed C 
should the requirement be jurisdictional.  
While the distinction the 
Medical 
Center draws is a salient one, we 
think it is better applied with the purpose of the requirement in mind.  Although timely notice cannot be given 
after the stated time for it has passed, prejudice from lack of notice may be 
cured or may never arise at all.  
While the government need not show prejudice to obtain dismissal for want 
of notice, if it chooses to try a case to judgment without complaining of a lack 
of notice, it suffers no impairment of right that would entitle it to complain 
of no notice for the first time on appeal.  
In this regard, lack of notice should no more be jurisdictional than 
improper venue.  Thus, even using 
the curable/incurable distinction, we cannot tell that the Legislature intended 
a ruling on notice to be subject to interlocutory appeal when a ruling on venue 
is not.
The 
Medical 
Center argues that notice should be 
jurisdictional, even though venue is not, because notice implicates substantive 
rights and venue does not.  We are 
not convinced of the premise.  The 
Legislature itself included both the notice and venue provisions in a subchapter 
entitled AProcedures@, 
along with provisions relating to the legal representation of governmental 
units, evidence of insurance coverage, settlements, payment and collection of 
judgments, and other seemingly non-substantive matters.[44]  Although the Code Construction Act 
cautions that A[t]he 
heading of a . . . subchapter . . . does not limit or expand 
the meaning of a statute@,[45] 
the heading gives some indication of the Legislature=s 
intent to group what it considered to be procedural matters together.
The 
Medical 
Center argues that we have construed 
provisions similar to the notice requirement in section 101.101(a) to be 
jurisdictional.  But the three cases 
cited by the Medical 
Center all involve the failure to 
exhaust administrative remedies.[46]  In Essenburg v. Dallas County, we said that a 
Afailure 
to exhaust administrative remedies may deprive courts of subject matter 
jurisdiction in the dispute . . . because the Legislature in 
conferring jurisdiction upon an agency expresses its will to have the agency 
resolve disputed issues of fact and policy.@[47]  Indeed, an Aexhaustion 
requirement seeks to assure that the appropriate body adjudicates the dispute 
C  the hallmark of a jurisdictional 
statute.@[48]  By contrast, we held that a statute 
providing that A>a 
person may not sue on a claim against a county unless the person has presented 
the claim to the commissioners= 
court and the commissioners= 
court has neglected or refused to pay all or part of the claim=@ 
was not jurisdictional.[49]  This presentment requirement, we said, 
was to promote settlement, not to define subject matter jurisdiction.[50]  A requirement of presentment merely 
gives a governmental unit an opportunity to decide for itself whether to pay a 
claim.  A requirement of exhaustion 
of remedies ensures a decision on the merits by the authority designated to make 
it.
The 
court of appeals cited Essenberg in support of 
its conclusion that the notice requirement in section 101.101(a) is not 
jurisdictional.  The 
Medical 
Center argues that Essenberg is irrelevant because the statute there was 
not an integral part of a statute waiving immunity as section 101.101(a) is, and 
because a presentment requirement is curable by abatement.  Neither argument is persuasive.  Section 101.101(a) is certainly integral 
to the Tort Claims Act, but so is section 101.102(a), the venue requirement, yet 
it is not jurisdictional.  And 
though a failure to present a claim before suit is filed is curable while a 
failure to give notice of a claim within six months is not, we do not think, for 
the reasons we have explained, that the distinction can be used to determine 
whether the notice provision is jurisdictional.
Finally, 
the Medical 
Center argues that to hold that the 
six-month notice provision is not jurisdictional improperly expands the Tort 
Claims Act=s 
waiver of immunity.  The 
Medical 
Center argues that there should be a 
presumption of non-waiver like that reflected in the Code Construction Act, 
which states that Aa 
statute shall not be construed as a waiver of sovereign immunity unless the 
waiver is effected by clear and unambiguous language.@[51]  Since this Court decided Hosner v. DeYoung in 
1847, the Medical 
Center continues, the Court has held 
that the State Acan[not] 
be sued in her own courts without her consent, and then only in the manner 
indicated by that consent.@[52]  The notice requirement in section 
101.101(a), the Medical 
Center insists, is part of the manner 
in which the Tort Claims Act waives immunity.  While we certainly do not disagree with 
the general principles the Medical 
Center asserts or recede from so 
venerable an authority as Hosner, we do not 
find them dispositive of whether the Legislature 
intended notice to be a condition of its waiver of immunity, for all of the 
reasons we have explained.
Thus, 
we conclude that the failure to give notice of a claim as required by section 
101.101 does not deprive a court of subject matter jurisdiction over an action 
on the claim.  We note that in other 
jurisdictions when notice or limitations provisions pertaining to suits against 
the government are considered jurisdictional, the statutory language is much 
clearer than section 101.101.[53]  We disapprove the decisions of the 
courts of appeals to the contrary.[54]  The notice provision is not a condition 
of the Tort Claims Act=s 
waiver of immunity as other provisions are.  We emphasize that the requirement of 
notice is no less mandatory, and that a lack of notice bars any action under the 
Act.  But it does not deprive the 
court of subject matter jurisdiction.
IV
The 
Medical 
Center argues that it did not waive 
its contention that the lack of notice required by section 101.101(a) barred 
Loutzenhiser=s 
claim by raising it seven weeks before trial.  We agree.  For one thing, the 
Medical 
Center raised the issue by motion for 
summary judgment much earlier in the litigation, and it was entitled to seek 
reconsideration based on subsequent authority.  Even if its motive was purely to 
exercise its newly-created right to take an interlocutory appeal from an adverse 
ruling on the issues raised by its plea to the jurisdiction, thereby delaying 
the trial, there was nothing to prevent it from doing so.  The trial court was understandably irked 
that resolution of a case already delayed by one interlocutory appeal would be 
further delayed by another, but any fault was the Legislature=s, 
not the Medical 
Center=s.  The 
Medical 
Center had a valid argument that it 
had not received the notice required by section 101.101(a), as we have now held, 
and it was entitled to raise it.  
Treating the Medical 
Center=s 
plea as a motion to reconsider the motion for summary judgment, the trial court 
should have granted summary judgment.
*          
*          
*          
*          
*
As 
we have said, the trial court=s 
order contained three rulings: it refused to dismiss the action based on the 
Medical 
Center=s 
arguments of no notice and no alleged use of property, and alternatively struck 
the plea as untimely.  The court of 
appeals simply Aaffirm[ed] 
the trial court=s 
judgment.@[55]  It should have affirmed only that 
portion of the order refusing to dismiss the case based on the 
Medical 
Center=s 
argument of no alleged use of property.[56]  It did not reach, and therefore could 
not affirm, the trial court=s 
alternative ruling striking the plea.  
And having correctly concluded that the 
Medical 
Center=s 
notice argument was not jurisdictional, the court of appeals did not have 
interlocutory appellate jurisdiction to affirm that portion of the trial 
court=s 
order.[57]  Accordingly, we modify the judgment of 
the court of appeals to affirm only that portion of the trial court=s 
order refusing to dismiss the case because of inadequate allegations of use of 
property.  As modified, the judgment 
is affirmed.
 
                                                                             

Nathan L. Hecht
Justice
Opinion 
delivered: July 9, 
2004




[1] Tex. 
Civ. 
Prac. & Rem. Code ' 101.025(a).

[2] Id. ' 101.101(a).

[3] Id. ' 101.101(c).

[4] ___ S.W.3d ___ (Tex. App.CDallas 2002).

[5] See Tex. 
Civ. 
Prac. & Rem. Code ' 101.001(3)(A) (Agovernmental unit@ means Athis state and all the several agencies of government 
that collectively constitute the government of this state@); Tex. 
Educ. Code '' 65.02(a)(7) (the University of Texas System includes 
the University of Texas Southwestern Medical Center at Dallas and its specified 
components),  74.101 (AThe University of Texas Southwestern Medical Center at 
Dallas is  a component institution 
of The University of Texas System under the management and control of the board 
of regents of The University of Texas System.@); see University of Texas Med. Branch v. 
York, 871 S.W.2d 175 (Tex. 1994) (treating a University of Texas medical 
school as a governmental unit under the Texas Tort Claims Act); Lowe v. Texas 
Tech Univ., 540 S.W.2d 297, 298 (1976).

[6] See Lowe v. Teator, 1 S.W.3d 819, 821 (Tex. App.CDallas 1999, pet. denied).

[7] See Act of May 27, 
1997, 75th Leg., R.S., ch. 1296, 1997 Tex. Gen. Laws 4936, 4937 (adding subsection 
(8) to Tex. 
Civ. 
Prac. & Rem. Code ' 51.014(a), allowing interlocutory appeals from 
orders granting or denying a plea to the jurisdiction by a governmental 
unit).

[8] Lowe, 1 S.W.3d at 
820-821.

[9] See 44 Tex. Sup. Ct. J. 573 (Apr. 5, 2001) (order denying the motion for rehearing of the 
petition for review of the decision in Lowe) (cause no. 
99-0980).

[10] See Tex. 
Civ. 
Prac. & Rem. Code ' 101.021 (AA governmental unit in the state is liable for 
. . . (2) personal injury and death so caused by a condition or use of 
tangible personal or real property if the governmental unit would, were it a 
private person, be liable to the claimant according to Texas law.@).

[11] Supra note 7.

[12] See Tex. 
Civ. 
Prac. & Rem. Code ' 51.014(a)(8) (AA person may appeal from an interlocutory order of a 
district court . . . that . . . (8) grants or denies a plea 
to the jurisdiction by a governmental unit as that term is defined in Section 
101.001 [of the Tort Claims Act].@).

[13] ___ S.W.3d ___ (Tex. App.CDallas 2002) (citing Stanton v. Univ. of Tex. Health 
Sci. Ctr., 997 S.W.2d 628, 629 (Tex. 
App.CDallas 1998, pet. denied).

[14] Id.

[15] 47 Tex. Sup. Ct. J. 2 (Oct. 3, 2003).  


[16] Tex. 
Gov=t Code '' 22.001(a)(2), 22.225(b)(3), (c); Henry Schein, Inc. v. Stromboe, 102 
S.W.3d 675, 687-688 (Tex. 2002).

[17] Compare National Sports & Spirit, Inc. v. 
Univ. of 
N. 
Texas, 117 S.W.3d 76, 79 (Tex. App.CFort Worth 2003, no pet.) (no jurisdiction); Crane 
County v. Saults, 101 S.W.3d 764, 768 
(Tex. App.CEl Paso 2003, no pet.) (same); 
Texas Dep=t of Transp. v. 
Blevins, 101 S.W.3d 170, 174 (Tex. 
App.CFort Worth 2003), appeal dismissed per curiam, ___ S.W.3d ___ 
(Tex. 2004)  
(same); Texana Cmty. MHMR Ctr. v. Silvas, 62 
S.W.3d 317, 324 (Tex. App.CCorpus Christi 2001, no pet.) (same); State v. Kreider, 44 S.W.3d 258, 263‑264 (Tex. App.CFort Worth 2001, pet. denied) (same); with 
University of Texas Sw. Med. Ctr. v. Loutzenheiser, ___ S.W.3d ___ (Tex. App.CDallas 2002) (jurisdiction), judgment modified and 
aff=d, ___ S.W.3d 
___ (Tex. 2004); Martinez v. Val Verde County Hosp. Dist., 110 S.W.3d 480 
(Tex. App.CSan Antonio 2003) (same), aff=d, ___ S.W.3d 
___ (Tex. 2004); Stanton, 997 S.W.2d at 629 
(same).

[18] Tex. 
Civ. 
Prac. & Rem. Code ' 101.101(a).

[19] Edinburg Hosp. 
Auth. v. Treviño, 941 S.W.2d 76, 78 
(Tex. 1997) (citing Witty v. Am. Gen. Capital Distribs., Inc., 727 S.W.2d 503, 505 
(Tex. 1987)) (also discussing Krishnan v. Sepulveda, 
916 S.W.2d 478, 482 (Tex. 1995); Pietila v. 
Crites, 851 S.W.2d 185, 186 (Tex. 1993); and Yandell 
v. Delgado, 471 S.W.2d 569, 570 (Tex. 1971)).  
Cf.  Act effective 
September 1, 2003, 78th Leg., R.S., ch. 822 , 
'' 1.01, 1.02, 1.03, and 1.04, 2003 Tex. Gen. Laws 2607, 
2607-2608 (adding (3) (A>Death= includes, for an individual who is an unborn child, the 
failure to be born alive.@) and (4) (A>Individual= includes an unborn child at every stage of gestation 
from fertilization until birth.@) to Tex. 
Civ. 
Prac. & Rem. Code 
' 71.001, but at ' 71.003 excluding such claims against, e.g., a 
physician or health care provider for lawful medical practices or procedures, 
and providing that these changes Aapply only to a cause of action that accrues on or after 
the effective date of this Act@ and that actions accruing prior to that time are 
governed by prior law).

[20] Barshop v. Medina 
County Underground Water Conservation Dist., 925 S.W.2d 618, 629 (Tex. 
1996); accord, C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 
315, 322 n.5 (Tex. 1994) (AStatutory provisions will not be so construed or 
interpreted as to lead to absurd conclusions, great public inconvenience, or 
unjust discrimination, if the provision is subject to another, more reasonable 
construction or interpretation.@); Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 135 (Tex. 1994 (Hecht, J., 
concurring) (Ain some circumstances, words, no matter how plain, will 
not be construed to cause a result the Legislature almost certainly could not 
have intended@); McKinney v. Blankenship, 282 S.W.2d 691, 698 
(Tex. 1955) (AUnless there is no alternative, a statute will not be 
interpreted so as to lead to a foolish or absurd result.@); Cramer v. Sheppard, 167 S.W.2d 147, 155 (Tex. 
1942) (Aconstitutional and statutory provisions will not be so 
construed or interpreted as to lead to absurd conclusions, great public 
inconvenience, or unjust discrimination, if any other construction or 
interpretation can reasonably be indulged in@); see Tex. 
Gov=t Code ' 311.021(3), (4) (AIn enacting a statute, it is presumed that 
. . . (3) a just and reasonable result is intended . . . 
[and] (4) a result feasible of execution is intended 
. . . .@).

[21] 968 S.W.2d 331, 334 (Tex. 1998).  


[22] Id. at 333 (construing Tex. 
Rev. 
Civ. 
Stat. 
Ann. art. 4590i, ' 10.01, now codified as 
Tex. 
Civ. 
Prac. & Rem. Code 
' 74.251(a)).

[23] Id. at 334 (AThis means that an action for the wrongful death of a 
child who lives more than two years after a prenatal injury will as a rule be 
barred by limitations, but the same result ensues when the decedent is an 
adult.  While there are 
circumstances when this result will seem harsh, it is well within the 
Legislature=s prerogative to prescribe the limitations period for a 
wrongful death claim which, it must be remembered, did not exist at common law 
and is a creature of statute.@) (citation omitted).

[24] Texas Dep=t of Crim. Justice v. 
Simons, ___ S.W.3d ___, ___ 
(Tex. 2004).

[25] Texas Dep=t of Transp. v. 
Jones, 8 S.W.3d 636, 638 (Tex. 1999) 
(per curiam) (citing Federal Sign v. Tex. State 
Univ., 951 S.W.2d 401, 403 (Tex. 1997)); Duhart v. State, 610 S.W.2d 740, 741 (Tex. 
1980); Missouri Pac. R.R. v. Brownsville Navigation Dist., 453 S.W.2d 
812, 814 (Tex. 1970); Walsh v. Univ. of Tex., 169 S.W.2d 993, 994 (Tex. 
Civ. App.CEl Paso 1942, writ ref=d); Hosner v. DeYoung, 1 Tex. 764, 769 
(1847)).

[26] See supra note 17.

[27] See Helena Chem. Co. v. Wilkins, 47 
S.W.3d 486, 494 (Tex. 2001) (AEven if a statutory requirement is mandatory, this does 
not mean that compliance is necessarily jurisdictional.@).

[28] 12 S.W.3d 71, 76 (Tex. 2000) (quoting Federal Underwriters Exch. v. 
Pugh, 174 S.W.2d 598, 600 (Tex. 1943).

[29] Texas Ass=n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 445-446 
(Tex. 1993).

[30] Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 853-854 
(Tex. 2000).

[31] Dubai, 12 S.W.3d at 76 (citing Restatement (Second) of Judgments 
' 12, cmt. b, at 118 
(1982)) (alterations in the original).

[32] Id.

[33] Tex. 
Civ. 
Prac. & Rem. Code ' 101.101(a) (emphasis 
added).

[34] Tex. 
Gov=t Code ' 311.016(4).

[35] Act of May 17, 1985, 69th Leg., R.S., ch. 959, 
' 1, 1985 Tex. Gen. Laws 3242, 
3305.

[36] Tex. 
Civ. 
Prac. & Rem. Code ' 1.001(a).

[37] Act of May 14, 1969, 61st Leg., R.S., ch. 292, 
' 16, 1969 Tex. Gen. Laws 874, 878 (AExcept where there is actual notice on the part of the 
governmental unit that death has occurred or that the claimant has received some 
injury, any person making a claim hereunder shall give notice of the same to the 
governmental unit against which such claim is made, reasonably describing the 
injury claimed and the time, manner and place of the incident from which it 
arose, within six months from the date of the incident.  Provided, however, except where there is 
such actual notice, charter and ordinance provisions of cities requiring notice 
within a charter period permitted by law are hereby expressly ratified and 
approved.@) (formerly Tex. 
Rev. 
Civ. 
Stat. 
Ann. art. 6252-19, ' 16).

[38] Cf. 
Tex. 
Gov=t Code ' 311.016(2) (stating that with respect to codified 
statutes, A>[s]hall= imposes a duty@).

[39] Id. ' 311.016(3).

[40] Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 494 
(Tex. 2001) (AWhen a statute is silent about the consequences of 
noncompliance, we look to the statute=s purpose to determine the proper 
consequences.@) (citing Albertson=s, Inc. v. Sinclair, 984 S.W.2d 958, 961 
(Tex. 1999); Schepps v. 
Presbyterian Hosp. of Dallas, 652 S.W.2d 934, 938 
(Tex. 1983); and Chisholm v. Bewley Mills, 287 S.W.2d 943, 945 
(Tex. 1956)); Hines v. Hash, 843 S.W.2d 464, 468 
(Tex. 1992).

[41] Cathey v. 
Booth, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam) (citing 
City of Houston v. Torres, 621 S.W.2d 588, 591 
(Tex. 1981)).   


[42] Tex. 
Civ. 
Prac. & Rem. Code ' 101.102(a).

[43] 674 S.W.2d 748, 751 (Tex. 1984).

[44] Act of May 17, 1985, 69th Leg., R.S., ch. 959, 
' 1, 1985 Tex. Gen. Laws 3242, 
3305-3306.

[45] Tex. 
Gov=t Code ' 311.024.

[46] Wilmer-Hutchins Indep. 
Sch. Dist. v. Sullivan, 51 S.W.3d 293, 293-295 
(Tex. 2001) (per curiam) 
(dismissing a claim against a school district for want of jurisdiction because 
of the plaintiff=s failure to exhaust administrative remedies); 
General Servs. Comm=n v. Little-Tex Insulation Co., 39 S.W.3d 591, 595-598 (Tex. 2001) (holding that 
exhaustion of administrative procedures under chapter 2260 of the Government 
Code is a prerequisite to suit under chapter 107 of the Civil Practice and 
Remedies Code); Texas Dep=t of Transp. v. Aer-Aerotron, Inc., 
39 S.W.3d 220, 220-221 (Tex. 2001) (same).

[47] 988 S.W.2d 188, 189 (Tex. 1988) (per curiam).

[48] Id.

[49] Id. at 188 (construing former Tex. Loc. 
Gov=t Code ' 81.041(a), now ' 89.004); cf. 28 U.S.C. ' 2675(a) (Federal Tort Claims Act) (AAn action shall not be instituted upon a claim against 
the United States for money damages for injury or loss of property or personal 
injury or death caused by the negligent or wrongful act or omission of any 
employee of the Government while acting within the scope of his office or 
employment, unless the claimant shall have first presented the claim to the 
appropriate Federal agency and his claim shall have been finally denied by the 
agency in writing and sent by certified or registered mail.@); e.g., Wardsworth v. United States, 721 F.2d 503, 505 
(5th Cir. 1983) (per curiam) (Aa lawsuit may be brought under the FTCA only after 
presenting the claim to the appropriate federal agency and receiving a denial of 
the claim@).

[50] 988 S.W.2d at 189.

[51] Tex. 
Gov=t Code ' 311.034.

[52] 1 Tex. 764, 769 (1847); accord, e.g., State v. 
Isbell, 94 S.W.2d 423, 424 (Tex. 1936); Wichita Falls State Hosp. v. Taylor, 106 
S.W.3d 692, 694 (Tex. 2003).

[53]Notice jurisdictional: 
Colorado C Colo. 
Rev. 
Stat. ' 24-10-109(1) (ACompliance with the provisions of this section shall be 
a jurisdictional prerequisite to any action brought under the provisions of this 
article, and failure of compliance shall forever bar any such 
action.@); Brock v. Nyland, 955 
P.2d 1037, 1043 (Colo. 1998) (holding that untimely notice creates a 
jurisdictional bar to suit against the state), overruled in part on other 
grounds by Finnie v. Jefferson County Sch. 
Dist. R-1, 79 P.3d 1253, 1255-1256 (Colo. 2003) (applying Asubstantial compliance@ standard to notice provision); Georgia 
C Ga. Code 
' 50-21-26(a)(3) (ANo action against the state . . . shall be commenced and 
the courts shall have no jurisdiction thereof unless and until a written notice 
of claim has been timely presented to the state as provided in this subsection . 
. . .@); Sylvester v. Dep=t of Transp., 555 S.E.2d 740, 741 (Ga. 2001) (holding that the 
failure to provide timely notice deprived the court of subject matter 
jurisdiction in suit against the state); Illinois C 705 Ill. Comp. 
Stat. 505/22-2 (stating if timely notice is not given, 
Aany such action commenced against [enumerated state 
agencies] shall be dismissed and the person to whom any such cause of action 
accrued for any personal injury shall be forever barred from further action in 
the Court of Claims@); Currie v. Lao, 592 N.E.2d 977, 979 (Ill. 1992) 
(stating that if suit against state employee was actually suit against the 
state, the exclusive jurisdiction of the Court of Claims could be raised for the 
first time on appeal); Montana C Mont. Code ' 2-9-301(1), (2) (AAll claims against the state . . . must be presented in 
writing to the department of administration . . . . A complaint based on a claim 
. . . may not be filed in district court unless the claimant has first presented 
the claim to the department of administration and the department has finally 
denied the claim.@); Stensom v. 
State, 930 P.2d 650, 655 (Mont. 1996) (AWhere a petitioner has failed to first file with the 
Department of Adminstration, the district court lacks 
jurisdiction to review the matter.@); see Buettner v. Dep=t of Labor & Indus., 784 P.2d 906, 907 (Mont. 1989) (stating that the 
notice requirement is Aa procedural statute which limits direct access to the 
courts . . . while the Department of Administration evaluates the 
claim@); New Jersey C N.J. 
Rev. 
Stat. ' 59:8-8 (stating that a claimant who fails to timely 
file notice of his claim with a public entity Ashall be forever barred from recovering against a public 
entity or public employee@); Brook v. April, 682 A.2d 744, 745 (N.J. Super. 
Ct. App. Div. 1996) (characterizing timely notice as a Ajurisdictional prerequisite@); Priore v. 
State, 462 A.2d 191, 192B193 (N.J. Super. Ct. App. Div. 1983) (holding that the 
failure to file timely notice was a nullity and did not confer jurisdiction on 
the court); New Mexico C N.M. Stat ' 41-4-16(B) (ANo suit or action for which immunity has been waived 
under the Tort Claims Act shall be maintained and no court shall have 
jurisdiction to consider any suit or action against the state or any local 
public body unless notice has been given as required by this section, or unless 
the governmental entity had actual notice of the occurrence.@); Emery v. Univ. of N.M. Med. Ctr., 628 P.2d 
1140, 1143 (N.M. Ct. App. 1981) (stating that improper notice is a 
jurisdictional bar to suit against the state); North Dakota C N.D. Cent. Code ' 32-12.2-04 (stating that claimants Ashall present@ timely notice to the director of the office of 
management and budget); Cooke v. Univ. of N.D., 603 N.W.2d 504, 
506B507 (N.D. 1999) (holding that claimant=s failure to provide proper notice deprived court of 
subject matter jurisdiction over claim against the state); Virginia 
C Va. Code 
' 8.01-195.6 (stating that A[e]very claim cognizable against the Commonwealth . . . 
shall be forever barred unless@ the claimant provides written notice of the claim); 
see Halberstam v. Commonwealth, 467 S.E.2d 783, 
785 (Va. 1996) (holding that strict compliance with statutes waiving sovereign 
immunity was required and that estoppel did not lie 
against the sovereign).
 
Notice not jurisdictional: 
Arizona C Ariz. 
Rev. 
Stat. ' 12-821.01(A) (stating that claimants Ashall file@ timely notice or it Ais barred and no action may be maintained 
thereon@); Pritchard v. State, 788 P.2d 1178, 1183 (Ariz. 
1990) (holding that claimant=s failure to comply with statutory notice requirements 
was not a jurisdictional defect which could be raised for the first time on 
appeal); California C Cal. 
Gov=t Code ' 911.2 (stating that claims Ashall be presented@ timely); see Phillips v. Desert Hosp. Dist., 780 
P.2d 349, 353 (Cal. 1989) (holding that the state waived defenses based on 
improper notice by failing to notify the claimant of the deficiencies); 
Florida C Fla. 
Stat. ' 768.28(6)(a) (stating that A[a]n action may not be instituted on a claim against the 
state . . . unless the claimant presents the claim in writing@ within the time provided); VonDrasek v. City of St. Petersburg, 777 So.2d 
989, 991 (Fla. Ct. App. 2000) (AIt is well established that the notice requirement in 
section 768.28(6) does not affect the jurisdiction of the court, but rather is a 
condition precedent to the lawsuit.@); Indiana C Ind. Code ' 34-13-3-6 (stating that Aa claim against the state is barred unless notice is 
filed@ timely); Rickets v. State, 720 N.E.2d 1244, 1246 
(Ind. Ct. App. 1999) (holding that substantial compliance with notice provisions 
was sufficient where its purpose was met); Lawrence County Comm=rs v. Chorley, 
398 N.E.2d 694 (Ind. Ct. App. 1979) (finding that state had waived notice in 
decision under former version of act); Michigan C Mich. Comp. 
Laws ' 600.6431 (ANo claim may be maintained against the state unless the 
claimant [timely] files . . . notice of an intention to file a claim against the 
state . . . .@); May v. Dep=t of Nat. Res., 
365 N.W.2d 192, 193 (Mich. 1985) (per curiam) (stating 
that because a delay in providing notice can never be long enough to constitute 
actual prejudice as a matter of law, the state=s claim of prejudice must be supported with evidence to 
warrant dismissal); Arnold v. Dep=t of Transp., 597 N.W.2d 261, 263B264 (Mich. Ct. App. 1999) (holding that verification 
requirement of notice provision was not jurisdictional); Minnesota 
C Minn. 
Stat. ' 3.736(5) (stating that Aevery person . . . who claims compensation from the 
state . . . shall present notice@ in a timely manner); Naylor v. Minn. Daily, 342 
N.W.2d 632, 634B635 (Minn. 1984) (holding that the failure to provide 
notice in suit against the state was not a jurisdictional defect); New 
Hampshire C N.H. Rev. 
Stat. ' 541-B:14(IV) (stating that filing notice is 
Aa condition precedent to commencement of the 
action@ but the lack of notice does not bar a claim unless the 
state can show prejudice); Opinion of Justices, 493 A.2d 1182, 1191 (N.H. 
1985) (advisory op.) (A[T]he loss of rights of action for failure to satisfy 
the notice requirement is . . . grossly disproportionate . . . . We therefore 
uphold the provision to the extent that noncompliance does not result in 
forfeiture of any rights of action against the State.  Viewed in this light, the [notice] 
provision=s language is directory, not mandatory or 
jurisdictional.@); New York C N.Y. Court of Claims Act '' 10 (requiring notice of claims), 11(c) (stating that 
the state=s objection based on improper notice Ais waived, unless raised, with particularity@ prior to or with the first responsive pleading); see 
Chapman v. State, 690 N.Y.S.2d 328, 329B330 (App. Div. 1999) (noting effect of section 11 was 
not retroactive); South Dakota C S.D. Codified 
Laws ' 3-21-2 (ANo action for the recovery of damages . . . caused by a 
public entity . . . may be maintained . . . unless written notice@ is given timely); Smith v. Neville, 539 N.W.2d 
679, 681 (S.D. 1995) (holding that state was estopped 
from claiming deficient notice); Wisconsin C Wis. 
Stat. ' 893.80(1) (stating that Ano action may be brought or maintained against [the 
state] . . . upon a claim or cause of action unless@ timely notice is given); Gillen v. City of 
Neenah, 580 N.W.2d 628, 634 (Wis. 1998) (holding that the failure to give 
notice of a claim against the state was not a jurisdictional defect that could 
be raised for the first time on appeal) (citing Figgs v. City of Milwaukee, 357 N.W.2d 548, 
552 n.6 (Wis. 1984)).  

 
Limitations period jurisdictional: Connecticut C Conn. 
Gen. 
Stat. ' 4-147 (stating that A[a]ny person wishing to 
present a claim against the state shall file with the clerk of the Office of the 
Claims Commissioner a notice of claim@); Prigge v. Ragaglia, 828 A.2d 542, 549 (Conn. 2003) (holding that 
the failure to comply with the claims procedure deprives the court of subject 
matter jurisdiction); Iowa C Iowa Code 
' 669.13 (stating that A[e]very claim and suit permitted under this chapter 
shall be forever barred, unless@ the claimant provides timely written notice to the 
state appeal board); Drahaus v. State, 
584 N.W.2d 270, 273 (Iowa 1998) (holding that the failure to exhaust 
administrative remedies is jurisdictional and the failure to timely file a claim 
divests the court of subject matter jurisdiction); see also Graves v. Iowa 
Lakes Cmty. Coll., 639 N.W.2d 22, 26 n.1 (Iowa 
2002) (stating that the failure to exhaust administrative remedies was not 
subject to waiver or estoppel and could be raised for 
the first time on appeal); Ohio C Ohio 
Rev. Code ' 2743.16(A) (stating that Acivil actions against the state permitted by [state tort 
claims act] shall be commenced@ within the limitations period); Smith v. Stempel, 414 N.E.2d 433 (Ohio Ct. App. 1979) (untimely 
filing does not activate state=s limited waiver of sovereign immunity); Wyoming 
C Wyo. 
Stat. ' 1-39-113(a) (stating that A[n]o action shall be brought under this act against a 
governmental entity unless@ the claimant provides notice); Peterson v. 
Sweetwater County Sch. Dist., 929 P.2d 525, 529 
(Wyo. 1983) (holding that failure to provide timely notice deprived court of 
subject matter jurisdiction). 
 
Limitations period not jurisdictional:  Alaska C Alaska 
Stat. ' 44.77.010 (requiring administrative presentment of 
contract claims against the state); State v. Zia, 
Inc., 556 P.2d 1257, 1263 (Alaska 1976) (holding that administrative 
presentment of contract claim against the state was a condition precedent to 
suit, but the failure to exhaust administrative remedies did not deprive court 
of subject matter jurisdiction); see also Alaska Stat. ' 09.50.250 (allowing tort claimants to bring an action 
against the state); Massachusetts C Mass 
Gen. 
Laws ch. 258 ' 4 (AA civil action shall not be instituted against [the 
state] unless the claimant shall have first presented his claim in writing . . . 
.@); McGrath v. Stanley, 493 N.E.2d 832, 836 (Mass. 
1986) (holding that proper notice is not a jurisdictional limitation, but a 
condition precedent affecting the right to recovery, not the existence of 
liability); Moran v. Town of Mashpee, 461 N.E.2d 1231, 1233 (Mass App. 
Ct. 1984) (holding that improper notice is not a jurisdictional defect and can 
be waived); Nebraska C Neb. 
Rev. 
Stat. '' 81-8,212 (requiring tort claims against the state to be 
filed with the Risk Manager in a manner prescribed by the State Claims Board), 
81-8,213 (stating that A[n]o suit shall be permitted under the State Tort Claims 
Act@ until there is a final disposition by the board, or six 
months have passed); Cole v. Isherwood, 653 
N.W.2d 821, 825B826 (Neb. 2002) (holding that the failure to comply with 
the claim presentment requirements of the state tort claims act does not deprive 
the court of subject matter jurisdiction); North Carolina C N.C. Gen. 
Stat. ' 143-299 (stating that A[a]ll claims against any and 
all State departments, institutions, and agencies shall henceforth be forever 
barred unless@ they are timely filed with the state Industrial 
Commission); see Jones v. Pitt County Mem=l Hosp., Inc., 
410 S.E.2d 513, 515 (N.C. Ct. App. 1991) (holding that although trial court 
lacked jurisdiction over claim which should have been filed with state 
Industrial Commission, the state=s argument that the trial court=s dismissal without prejudice impermissibly extended 
limitations was not preserved for appeal); South Carolina C S.C. Code 
' 15-78-110 (requiring claimant to timely sue or file 
verified claim or it Ais forever barred@); Joubert v. S.C. 
Dep=t of Social Servs., 534 S.E.2d 
1, 8 (S.C. App. 2000) (stating that strict compliance with the verified claim 
requirements was mandatory and had the effect of extending limitations in a suit 
against the state); West Virginia C W. Va. Code 
' 29-12A-6 (stating that actions against political 
subdivisions Ashall be brought within two years@); see Stamper v. 
Kanawha County Bd. of Educ., 445 S.E.2d 238, 240 
(W.Va. 1994) (characterizing section 29-12A-6 as Aa procedural statute dealing primarily with statutes of 
limitations.  It does not contain 
substantive limitations.@).

[54] These include National Sports & Spirit, Inc. v. 
Univ. of N. Tex., 117 S.W.3d 76 (Tex. App.CFort Worth 2003, no pet.); Crane County v. Saults, 101 S.W.3d 764 (Tex. App.CEl Paso 2003, no pet.); Texas Dep=t of Transp. v. 
Blevins, 101 S.W.3d 170 (Tex. 
App.CFort Worth 2003), appeal dismissed per curiam, ___ S.W.3d ___ (Tex. 2004); Texana Cmty. MHMR Ctr. 
v. Silvas, 62 S.W.3d 317 (Tex. App.CCorpus Christi 2001, no pet.); State v. Kreider, 44 S.W.3d 258 (Tex. App.CFort Worth 2001, pet. 
denied).

[55] ___ S.W.3d at ___.

[56] See Texas Dep=t of Transp. v. 
Jones, 8 S.W.3d 636, 637-639 
(Tex. 1999) (per curiam).

[57] See Texas Dep=t of Crim. Justice v. 
Simons, ___ S.W.3d ___, ___ 
(Tex. 2004).