NATIONAL SPORTS & SPIRIT, INC., NSG Corporation, National Spirit Group, Ltd., Individually and d/b/a Marching Auxiliaries of America, and Marching Auxiliaries, Inc., Individually and d/b/a Marching Auxiliaries of America, Appellants,

v.

The UNIVERSITY OF NORTH TEXAS, Appellee.

No. 2–02–401–CV.

Court of Appeals of Texas, Fort Worth.

July 24, 2003.

Rehearing Overruled Aug. 27, 2003.

Downs & Stanford, P.C., Jay R. Downs, Paul R. Clevenger, Dallas, for appellants.

Greg Abbot, Attorney General of Texas, Barry R. McBee, First Assistant Attorney General, Jeffrey S. Boyd, Deputy Attorney General for Litigation, Nelly R. Herrera, Chief, Tort Litigation Division, S. Ronald Keister, Assistant Attorney General, Attorney–In–Charge, Office of the Attorney General, Tort Litigation Division, Austin, for appellee.

PANEL B: DAY, LIVINGSTON, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

Appellants National Sports and Spirit, Inc., NSG Corporation, National Spirit Group, Ltd., individually and d/b/a Marching Auxiliaries of America, and Marching Auxiliaries, Inc., individually and d/b/a Marching Auxiliaries of America appeal from the trial court's order granting the University of North Texas's (UNT) plea to the jurisdiction. In five points, appellants argue that (1) the trial court erred in granting UNT's plea to the jurisdiction because appellants' pleadings show that UNT waived sovereign immunity under the Texas Tort Claims Act (TTCA); (2) the trial court erred in granting the plea to the jurisdiction because appellants' pleadings satisfy the personal injury damage requirement of TTCA section 101.021; (3) the trial court erred in granting the plea to the jurisdiction because the *Brown and Root* line of cases is still good law; (4) the trial court erred in granting the plea to the jurisdiction because the notice requirements of the TTCA have been satisfied; and (5) the trial court erred in granting the plea to the jurisdiction because sovereign immunity can be waived for strict liability under the TTCA. We affirm.

## I. Factual Background

From June 9–12, 1999, appellants ran a drill team camp on UNT's campus. During the camp, UNT served food and ice to

the participants from a campus cafeteria. After the camp was over, several participants became seriously ill from E. coli. Catherine Harvey, a participant in the camp, filed a personal injury claim against UNT and appellants. Appellants filed a cross-claim against UNT for indemnification, alleging that Harvey's claim was a products liability action covered by Texas Civil Practice and Remedies Code section 82.002. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (Vernon 1997). UNT filed a plea to the jurisdiction and moved to dismiss and sever appellants' cross-claim. UNT argued that it was a governmental entity entitled to sovereign immunity, and immunity had not been waived. The trial court granted UNT's plea.

## II. Notice Requirements

In their fourth point, appellants allege that the trial court erred in granting the plea to the jurisdiction because the notice requirements of the TTCA were satisfied. UNT responds that appellants cannot satisfy the notice requirements of the TTCA by relying upon actual or written notice of the underlying cause of action. Thus, appellants failed to give the required six month notice under the TTCA. Because compliance with the notice provisions of the TTCA is a prerequisite to a waiver of sovereign immunity, we will address this point first. State v. Kreider, 44 S.W.3d 258, 263 (Tex.App.-Fort Worth 2001, pet. denied).

A plea to the jurisdiction is a dilatory plea, the purpose of which is to "defeat a cause of action without regard to whether the claims asserted have merit." Bland ISD v. Blue, 34 S.W.3d 547, 554 (Tex.2000). The plea challenges the trial court's authority to determine the subject matter of a pleaded cause of action. City of Midland v. Sullivan, 33 S.W.3d 1, 6 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.);

State v. Benavides, 772 S.W.2d 271, 273 (Tex.App.-Corpus Christi 1989, writ denied).

We review a trial court's ruling on a plea to the jurisdiction under a de novo standard of review because subject matter jurisdiction is a question of law. City of Fort Worth v. Robles, 51 S.W.3d 436, 439 (Tex.App.-Fort Worth 2001, pet. denied). In determining whether jurisdiction exists, rather than looking at the claim's merits, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. See County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex.2002); MET–Rx USA, Inc. v. Shipman, 62 S.W.3d 807, 810 (Tex.App.-Waco 2001, pet. denied). We may also consider evidence necessary to resolve the jurisdictional issues raised. See Brown, 80 S.W.3d at 555.

In order to invoke the waiver of sovereign immunity provided by the TTCA, a claimant must provide the governmental unit with formal, written notice of the claim against it within six months of the incident giving rise to the claim. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a) (Vernon 1997). However, the formal notice requirements do not apply if the governmental unit has actual notice of the claim. Id. § 101.101(c). The purpose of the notice requirement is to ensure prompt reporting of claims in order to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); see also Texana Cmty. MHMR Ctr. v. Silvas, 62 S.W.3d 317, 324–25 (Tex.App.-Corpus Christi 2001, no pet.). Because compliance with the notice provisions of the TTCA is a prerequisite to a waiver of sovereign immunity, failure to give notice under section 101.101 precludes the waiver of sovereign immunity from suit. Kreider,

44 S.W.3d at 263; *Brown v. City of Houston,* 8 S.W.3d 331, 334 (Tex.App.-Waco 1999, pet. denied).

 Actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. *Cathey,* 900 S.W.2d at 341. To have actual notice, the governmental unit must have the same information it would have had if the claimant had complied with the formal notice requirements. *Texana,* 62 S.W.3d at 324–25; *Bourne v. Nueces County Hosp. Dist.,* 749 S.W.2d 630, 632–33 (Tex.App.-Corpus Christi 1988, writ denied). Mere notice that an incident has occurred is not enough to establish actual notice for purposes of the TTCA. *See Putthoff v. Ancrum,* 934 S.W.2d 164, 173 (Tex.App.-Fort Worth 1996, writ denied).

 Additionally, actual notice may be imputed to the governmental unit only when an agent or representative of the entity charged with a duty to investigate and report to the governmental unit receives the three elements of actual notice outlined in *Cathey. See Dinh v. Harris County Hosp. Dist.,* 896 S.W.2d 248, 252–53 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.). But governmental entities have actual notice to the extent that a prudent entity could ascertain its potential liability stemming from an incident, either by conducting a further investigation or because of its obvious role in contributing to the incident. *City of San Angelo v. Smith,* 69 S.W.3d 303, 307 (Tex.App.-Austin 2002, pet. denied).

 Appellants concede that they did not meet the formal notice requirements of section 101.101(a) of the TTCA; however, they argue that UNT had actual notice of the claim under section 101.101(c). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.101(a), (c). Thus, we must determine whether the pleadings and evidence are sufficient to allege that UNT received actual notice of its potential liability. *See Tex. Dep't of Criminal Justice v. Simons,* 74 S.W.3d 138, 140 (Tex.App.-Beaumont 2002, pet. granted); *see also Texana,* 62 S.W.3d at 325.

The record shows that the Centers for Disease Control and Prevention (CDC) conducted an investigation concerning the E. coli outbreak on UNT's campus. After completing the investigation in August of 1999, Dr. John T. Brooks attached a memorandum with his findings and submitted it to state officials before leaving Texas.

The memorandum states that the Texas Department of Health was notified of a cluster of illnesses among persons who attended a summer camp from June 9–11 on the campus of a state university. The sick individuals reported nausea, vomiting, severe abdominal cramping, and diarrhea, some of which was bloody. Two of the individuals were hospitalized with hemolytic uremic syndrome.

The CDC staff conducted a laboratory investigation in which they collected rectal swabs and/or stool samples from the staff who prepared or served the food from the cafeteria during the camp. An environmental investigation of the cafeteria kitchen revealed evidence of potential temperature abuse, including undercooking and inadequately reheating food. The salad bar also contained vegetables that were placed directly from the bag to the salad bar without being washed. UNT provided large trash cans of ice for the campers; however, no scoop was provided, and the ice was often refilled without cleaning the cans. The CDC ultimately determined that the illnesses were caused by E. coli

that contaminated the ice and the salad bar.

Based on the thoroughness of the CDC report, there is little doubt that UNT had knowledge of the injuries resulting from the E. coli. The report discusses how many individuals got sick, what type of symptoms they had, and specifically states that two people were hospitalized.

UNT's possible fault in the incident is also provided by the CDC report. The report discusses the investigation of the cafeteria staff and the cafeteria itself. It further concludes that the illnesses were the result of E. coli that was in the salad bar and ice barrels provided by UNT. Thus, UNT had notice of its possible fault in the incident.

Finally, UNT tries to argue that it did not know the identity of the parties involved because the CDC report never specifically references UNT, but only refers to a state university, and there is no evidence that UNT had knowledge of the report. This argument fails because the report specifically states that it was "submitted to state officials before leaving Texas." Furthermore, the CDC attached to its final report the questionnaire that it distributed to the campers. The questionnaire was titled "Marching Auxiliary— Drill Camp Attendees Questionnaire University of North Texas Outbreak June 9– June 11, 1999." Thus, UNT knew that the outbreak occurred on its campus and that appellants, who were formerly doing business as Marching Auxiliary, were involved.[1] *See City of San Angelo,* 69 S.W.3d at 307 (holding that governmental entities have actual notice to the extent that a prudent entity could ascertain its potential liability stemming from an incident because of its obvious role in contributing to the incident).

After reviewing the evidence in the record, we conclude that appellants have met the three elements of section 101.101 for actual notice. TEX. CIV. PRAC. & REM.CODE ANN. § 101.101. We sustain appellants' fourth point.

### III. Waiver of Sovereign Immunity

■ In their first point, appellants contend that the trial court erred in granting UNT's plea to the jurisdiction because appellants' pleadings show that UNT waived sovereign immunity under the TTCA. UNT responds that for a statute to waive sovereign immunity, the waiver must be expressed in clear and unambiguous language and that Chapter 82 of the Texas Civil Practice and Remedies Code, upon which appellants' claim is based, does not meet this requirement because it does not include a waiver of immunity provision.

■ The State of Texas, even if it has committed tortious acts, is immune from suit unless it gives its consent to be sued. *Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997) (holding that immunity from suit bars a remedy until the legislature consents to suit); *Mo. Pac. R.R. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970) (same). As an agency of the State, UNT enjoys the protection afforded by this sovereign immunity, except in instances where immunity has been expressly waived by statute. *See Delaney v. Univ. of Houston,* 835 S.W.2d 56, 58–59 (Tex.1992); *see also Fed. Sign,* 951 S.W.2d at 405 (stating that a suit against an agency of the state is considered a suit against the State of Texas).

■ It is well-settled in Texas that for the legislature to waive the state's sovereign immunity, a statute or resolution

---

1. Appellants paid approximately $71,506.34 for the use of UNT's facilities for the camp. This included UNT's agreement to prepare and serve food and ice to the participants.

must contain a clear and unambiguous expression of the legislature's waiver of immunity. *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003). In 2001, the legislature ratified this approach by adding section 311.034 to the Code Construction Act. *See* Tex. Gov't Code Ann. § 311.034 (Vernon Supp.2003); *Wichita Falls State Hosp.*, 106 S.W.3d at 696. It states that "[i]n order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034.

Under section 101.021(2) of the TTCA, a state government unit is liable for "personal injury and death ... caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2). Thus, governmental immunity is waived when the following three conditions are met: (1) the cause of action is for personal injury or death; (2) the personal injury or death is caused by a condition or use of tangible personal or real property; (3) and the governmental unit would, if it were a private person, be liable to the claimant under Texas law. *Id.*

Here, appellants' pleadings fail to establish the third element of section 101.021(2), that the governmental unit would, if it were a private person, be liable to the claimant under Texas law. *Id.* Appellants argue that they satisfied this element because this is a Chapter 82 products liability cause of action, and UNT, as the manufacturer of the defective product, owes a statutory duty to indemnify appellants, as the

seller. *See id.* § 82.002(a) (Vernon 1997). UNT, however, contends that immunity is not waived because section 82.002(a) does not clearly waive sovereign immunity.

Although some statutes leave no doubt about the legislature's intent to waive immunity, when a statute does not use clear language to confirm its intent, the Texas Supreme Court has employed several factors to determine whether a statute that is less explicit may nevertheless waive the State's immunity from suit. *See Wichita Falls State Hosp.*, 106 S.W.3d at 696–97.

First, a statute that waives immunity must do so beyond doubt, even though it does not have to be a model of "perfect clarity." *Id.; City of LaPorte v. Barfield*, 898 S.W.2d 288, 291–92 (Tex. 1995); *see also Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 8 (Tex.2000) (finding waiver when the provision in question would be meaningless unless immunity was waived). Second, when construing a statute that purportedly waives sovereign immunity, any ambiguity should generally be resolved by retaining immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 697; *Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 249–50 (Tex. 2002). Third, if the legislature requires that the State be joined in a lawsuit for which immunity would otherwise attach, the legislature has intentionally waived sovereign immunity. *Wichita Falls State Hosp.*, 106 S.W.3d at 697–98; *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex.1994). Finally, the court has recognized that when waiving immunity by explicit language, the legislature often enacts simultaneous measures to insulate public resources from the reach of judgment creditors. *Wichita Falls State Hosp.*, 106 S.W.3d at 698; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 101.023–.024 (Vernon 1997 & Supp.2003); Tex. Gov't Code Ann. § 554.003 (Vernon Supp.2003).

Texas Civil Practice and Remedies Code section 82.002 does not contain the sort of language that the legislature generally uses to confirm its intent to waive immunity from suit. Thus, with the above principles in mind, we will examine the statutory language of Chapter 82 to determine whether the legislature implicitly waived immunity.

The statute does not require that the State be joined in a lawsuit for which immunity would otherwise attach, which implies that waiver does not apply. *See Wichita Falls State Hosp.*, 106 S.W.3d at 697–98. The statute also does not include a simultaneous provision to insulate the limitation on the State's potential liability. *See id.* Under the statute, a manufacturer must indemnify a seller against "loss," which includes court costs and other reasonable expenses, reasonable attorney's fees, and other reasonable damages. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(b). Even though the statute requires the indemnity for "reasonable" expenses, fees, and damages, it still possibly subjects the State to indeterminate damage awards. *See Wichita Falls State Hosp.*, 106 S.W.3d at 701 (stating that "[o]ur decisions recognizing a waiver of immunity have generally left undisturbed the [l]egislature's interest in protecting the State's financial resources"). This weighs against waiver of immunity. Finally, although the courts do not require a statute to use "magic words" to establish waiver of immunity, the statute must still waive immunity beyond doubt. *See id.* at 697; *see also* TEX. GOV'T CODE ANN. § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

Here, we conclude that the legislature did not intend waiver of immunity under section 82.002. Therefore, appellants may not use a statute that does not waive immunity to then try and prove waiver under the third element of the TTCA. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (requiring that a government unit would, if it were a private person, be liable to the claimant under Texas law). To allow otherwise would mean that any plaintiff who had a cause of action under any statute where a private person would be liable could then show waiver under the third element of the TTCA. *See id.* We do not believe that the intention of the TTCA is to be so broadly construed. *See Michael v. Travis County Hous. Auth.*, 995 S.W.2d 909, 912 (Tex.App.-Austin 1999, no pet.) (holding that waiver is to be liberally construed in order to effectuate the purposes of the Act); *see also Tex. Natural Res. & Conservation Comm'n v. White*, 13 S.W.3d 819, 825 (Tex.App.-Fort Worth 2000), *rev'd on other grounds*, 46 S.W.3d 864 (Tex. 2001) (stating "we will interpret the TTCA waiver provisions broadly, but within reason and while keeping in mind that the legislature did not intend a general waiver of governmental immunity").

The supreme court has cautioned, however, against an expansive reading of the waiver that would cause the exception to lose its limited character: "[T]he waiver of immunity in the Tort Claims Act is not, and was not intended to be, complete. Arguments for applications of the Act that would essentially result in its waiver becoming absolute must therefore be rejected as contrary to the Act's fundamental purpose." *Dallas County MHMR v. Bossley*, 968 S.W.2d 339, 342 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). Our holding does not result in waiver becoming absolute because appellants had other theories that they could have used to bring their claim under

the TTCA. Thus, appellants' first point is overruled.

## IV. Personal Injury Damage Requirement

In their second point, appellants allege that the trial court erred in granting the plea to the jurisdiction because appellants' pleadings satisfy the personal injury damage requirement of TTCA section 101.021. Because we have concluded that the third element of section 101.021(2) has not been met, we need not address appellants' second point.[2] *See* Tex.R.App. P. 47.1.

## V. Strict Liability Under the Act

In their fifth point, appellants contend that the trial court erred in granting the plea to the jurisdiction because sovereign immunity can be waived for strict liability under the Act. UNT responds that neither appellants' nor Harvey's pleadings were sufficient to establish waiver of sovereign immunity.

Because appellants rely on section 82.002 and the TTCA as authority for their strict liability claim against UNT and we have concluded that section 82.002 does not waive immunity, we overrule appellant's fifth point. *See Loyd v. ECO Res., Inc.*, 956 S.W.2d 110, 125 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (finding no authority for waiver of immunity for strict products liability claim).

## VI. Conclusion

Having sustained appellants' fourth point, which relates to notice only, and

having overruled their remaining points, we affirm the trial court's judgment.

---

2. In their third point, appellants argue that the trial court erred in granting the plea to the jurisdiction because the *"Brown and Root"* opinions are still good law. *See Keiffer v. S. Pac. Transp. Co.*, 486 F.Supp. 798, 800 (E.D.Tex.1980); *Brown & Root, Inc. v. City of Cities Mun. Util. Dist.*, 721 S.W.2d 881, 883–84 (Tex.App.-Houston [1st Dist.] 1986, no writ); *City of Denton v. Mathes*, 528 S.W.2d 625, 632 (Tex.Civ.App.-Fort Worth 1975, writ ref'd n.r.e.). Because these cases discuss a cross-defendant's ability to rely on the underlying plaintiff's personal injury claim to satisfy the section 101.021 personal injury requirement and we have already concluded that we need not address the personal injury issue, we conclude that we do not need to address appellants' third point. *See* Tex.R.App. P. 47.1.