OPINION HEADING PER CUR 









                NO.
12-07-00268-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

 

TEXAS
DEPARTMENT OF 

TRANSPORTATION,          §          APPEAL
FROM THE 115TH

APPELLANT

 

V.        

STEPHANIE
ANDERSON, CRIS

ANDERSON,
KAREN BOBO, RODNEY

BOBO AND JOSE
ALICIO VAZQUEZ,    §          JUDICIAL DISTRICT COURT OF

INDIVIDUALLY
AND AS HEIR AND

REPRESENTATIVE
OF THE ESTATE   

OF MARIANA
RAMIREZ, DECEASED 

AND AS NEXT
FRIEND OF NANCY 

HERNANDEZ,
CESAR HERNANDEZ, 

JOSE
GUADALUPE VASQUEZ, AND 

ANGEL ANTONIO
VAZQUEZ, MINORS,

APPELLEES §          UPSHUR COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Texas
Department of Transportation (“TxDOT”) filed this interlocutory appeal
challenging the trial court’s order denying its plea to the jurisdiction.  In one issue, TxDOT argues that the trial
court erred in denying its plea because Appellees, Stephanie Anderson, Cris
Anderson, Karen Bobo, Rodney Bobo, and Jose Alicio Vazquez, individually and as
heir and representative of the estate of Mariana Ramirez, deceased, and as next
friend of Nancy Hernandez, Cesar Hernandez, Jose Guadalupe Vasquez, and Angel
Antonio Vazquez, minors, did not give notice under Texas Civil Practice and
Remedies Code, section 101.101.  We
reverse and render.

 

Background








            On October
4, 2004, Appellees Stephanie Anderson and Karen Bobo were involved in a two
vehicle collision on US Highway 271 near the county line between Upshur and
Camp Counties.  Mariana Ramirez was
killed in the collision, and Anderson and Bobo were seriously injured.  Appellees contend that the collision was
caused by standing water resulting from a defect in the roadway, that caused
Ramirez to lose control of her vehicle and collide with the vehicle occupied by
Anderson and Bobo.  Appellees base their
contention, in part, on the affidavit testimony of C. L. Hollis.  Hollis’s affidavit states, in pertinent part,
as follows:

 

I am currently employed as an
officer with the Texas Department of Public Safety.  On October 4th, 2004, I responded to and
investigated a car wreck on Highway 271 north of Gilmer in which Stephanie
Anderson, Karen Bobo, and Mariana Ramirez suffered injuries.

 

Within days after October
4th, 2004 I went to the Texas Department of Transportation office outside of
Gilmer and notified employees there, including the maintenance supervisor, of
the wreck.  I provided TxDOT with the
identities of the victims, the date of the wreck, and the wreck’s
location.  I notified them that there was
one fatality and that several others were seriously injured in the wreck.  I indicated that the wreck was caused, in my
opinion, by the faulty condition of the road. 
I informed TxDOT employees that in my opinion the roadway allowed water
to pool creating a dangerous condition and a potential for hydroplaning.

 

This was not the first time
that I had notified TxDOT about problems on that stretch of roadway, as I had
worked many accidents there in the past during periods of precipitation, and
had been to that office on more than one occasion warning them about the
dangerous condition of the roadway.

 

 

                The Anderson and Bobo appellees filed
suit against TxDOT and others on January 3, 2006.  TxDOT answered and, thereafter, Jose Alicio
Vasquez intervened, in both his individual and representative capacities.  TxDOT subsequently moved to dismiss Appellees’
case for lack of jurisdiction pursuant to the doctrine of sovereign
immunity.  In its motion, TxDOT contended
that Appellees had not provided formal written notice of their claim as
required by the Texas Tort Claims Act.[1]  Appellees responded that while they may not
have provided formal written notice at TxDOT following the car wreck, TxDOT had
received actual notice within the six month period.[2]  

            After
conducting a hearing on the matter, the trial court denied TxDOT’s plea to the
jurisdiction.  TxDOT timely filed this interlocutory
appeal.

 

Sovereign
Immunity

            In its
sole issue, TxDOT contends that the trial court erred in denying its plea to
the jurisdiction because it did not receive actual notice of Appellees’
claims.  The State of Texas cannot be
sued in her own courts without her consent and then only in the manner
indicated by that consent.  Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694
(Tex. 2003) (citing Hosner
v. De Young, 1 Tex. 764, 769 (1847)).  Under
the centuries old common law doctrine of sovereign immunity, the State is
immune from liability and also from lawsuits. 
Ben Bolt-Palito
Blanco Consol. Ind. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint
Self-Ins. Fund, 212 S.W.3d 320, 324 (Tex. 2006). 
The doctrine of sovereign immunity has two purposes.  First, state officials are not subjected to
second guessing of certain governmental actions and decisions that involve
making judgment calls.  See Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 43
(Tex. 2002).  Second, it protects the
public coffers by keeping tax resources from being shifted away from their
intended purposes and toward defending lawsuits and paying judgments.  See Ben Bolt, 212 S.W.3d at 326. 

            For the
legislature to waive the State’s sovereign immunity, a statute or resolution
must contain a clear and unambiguous expression of the legislature’s waiver of
immunity.  Taylor, 106 S.W.3d at 696.  That means a statute that waives the State’s
immunity must do so beyond doubt.  Id. at 697. 
Further, when construing a statute that purportedly waives sovereign
immunity, we generally resolve ambiguities in favor of the State’s retaining
its immunity.  See id.

Standard
of Review

            Sovereign
immunity from suit defeats a trial court’s subject matter jurisdiction and thus
is properly asserted by a plea to the jurisdiction.  See Texas Dep’t of Transp. v. Jones, 8 S.W.3d 636, 639
(Tex. 1999).  Subject matter jurisdiction
is essential to the authority of the trial court to decide a case.  Starkey
v. Andrews Center, 104 S.W.3d 626, 628 (Tex. App.–Tyler 2003, pet.
denied).  Whether a trial court has
jurisdiction is a question of law subject to de novo review.  Ben
Bolt,
212 S.W.3d at 323.  Because the issue in
this case is whether the trial court lacked jurisdiction due to TxDOT’s
assertion of sovereign immunity, our review is de novo.  Id. 

 Actual Notice

            The Texas
Tort Claims Act requires a claimant to provide a governmental unit with formal,
written notice of a claim against it within six months of the incident giving
rise to the claim; however, the formal notice requirements do not apply if the
governmental unit has actual notice of the claim.  See Tex.
Civ. Prac. & Rem. Code Ann. § 101.101; Cathey v. Booth, 900 S.W.2d 339, 340
(Tex. 1995).  Such “actual notice” to a
governmental unit requires knowledge of (1) a death, injury, or property
damage; (2) the governmental unit’s alleged fault producing or contributing to
the death, injury, or property damage; and (3) the identity of the parties
involved.  See Cathey, 900 S.W.2d at 341.  

            Appellees
have produced undisputed evidence showing that Hollis notified TxDOT employees
within days of the automobile accident at issue informing them of the fatality
and injuries and of his opinion that the accident had been caused by the faulty
condition of the road.  Appellees also
produced undisputed evidence that Miles Garrison, a TxDOT pavement engineer who
was responsible for repairing faulty roads, conducted an investigation in July
2005, which showed that the cross slope at the accident site was
inadequate.  Further undisputed evidence
of record indicated that engineers with TxDOT exchanged emails in June 2005
about the need to repair the road. 
Appellees contend that each of these three pieces of undisputed evidence
established that TxDOT had actual notice as required by subsection
101.101(c).  TxDOT contends that none of
this evidence reaches the level required to establish actual notice under the
statute.  

            With
reference to the exchange of emails among the TxDOT engineers in June 2005,
TxDOT contends that such correspondence transpired outside the six month notice
period prescribed by the statute and, therefore, cannot be relied upon to
satisfy the actual notice requirement. 
We agree.  These emails were
exchanged among the TxDOT engineers approximately eight months after the
accident.  Moreover, nothing in the
emails shows that TxDOT had actual subjective awareness of fault within six
months of the accident.  Therefore, the
emails do not establish actual notice. 
See Tex. Civ. Prac. &
Rem. Code Ann. § 101.101(a), (c).

            We next
consider the evidence that Garrison conducted an investigation and found an
inadequate cross slope at the accident site. 
According to the record, sometime in early 2005 after receiving a
newspaper article about the accident in question, Garrison requested a copy of
the accident report prepared by DPS. 
Appellees do not contend that either the newspaper article or the
accident report shows that TxDOT had the required actual notice within six
months of the accident.  In July 2005,
Garrison investigated several sites at which accidents frequently occurred in
wet weather after identifying those sites at the request of the main TxDOT
office in Austin.  Because this
investigation occurred approximately nine months after the accident, it cannot
establish TxDOT’s actual notice within the six month statutory period.  Moreover, Garrison did not consider causation
when conducting his investigation, and did not conclude that the inadequate
cross slope had caused the accident. 
Therefore, even if the investigation had occurred within six months of
the accident, it would not show that TxDOT had actual notice.

            We finally
consider whether Hollis’s notice to TxDOT of his opinion that the accident was
caused by a faulty condition of the road established in TxDOT a subjective
awareness that its fault produced or contributed to the death and injuries
suffered.  In 2004, the Texas Supreme
Court clarified its interpretation of the term “actual notice” stating,

 

[W]hat we intended in Cathey by
the second requirement for actual notice was that a governmental unit have
knowledge that amounts to the same notice to which it is entitled by section
101.101(a).  That includes subjective
awareness of its fault, as ultimately alleged by the claimant, in producing or
contributing to the alleged injury. . . . If a governmental unit is not
subjectively aware of its fault, it does not have the same incentive to gather
information that the statute is designed to provide, even when it would not be
unreasonable to believe that the governmental unit was at fault.

 

 

Tex.
Dep’t of Criminal Justice v. Simons, 140 S.W.3d 338, 347 (Tex. 2004).  When the State receives notice pursuant to
subsection 101.101(a), it not only has an awareness of its alleged fault, but
also an incentive to investigate the allegations to assess its exposure to
liability because it no longer is protected by the shield of sovereign
immunity.    To have received “actual
notice,” TxDOT must have had the same incentive to determine its fault as if it
had received notice under subsection 101.101(a).  Id.  Thus, for “actual
notice” to overcome sovereign immunity, it must create in the State at least
the same degree of perceived peril as does notice under subsection
101.101(a).  

            With a
substantial number of automobile accidents occurring annually on Texas roads,[3] it is reasonable that a governmental unit’s knowledge of
an accident, without more, does not constitute the actual notice required by
subsection 101.101(c).  See Cathey, 900 S.W.2d at 341 (imputing actual
notice to hospital from knowledge that patient received treatment at its
facility or died after receiving treatment equivalent to having no notice
requirement at all).  A governmental unit
cannot acquire actual notice merely by conducting an investigation, or even by
obtaining information that would reasonably suggest its culpability.  Simons, 140 S.W.3d at
347.  It is not enough that a
governmental unit should have investigated an incident that a prudent person
would have, or that it did investigate, perhaps as part of a routine safety
procedure, or that it should have known from the investigation it conducted
that it might have been at fault.  Id. at 346–47. 
Therefore, applying Simons, even though Hollis
may have believed that TxDOT was responsible for the faulty condition of the
road, TxDOT’s knowledge of Hollis’s opinion, without more, does not show
subjective awareness of fault.  The
undisputed evidence before us is that this matter never reached the stage of
TxDOT’s assessing its fault.  Without assessment
of its fault, TxDOT cannot be said to have had subjective awareness of its
fault for this accident.  

            Appellees
contend that the facts of the case at hand are similar to those in Bosler v. Riddle, No. 07-05-00283-CV,
2007 WL 686645 (Tex. App.–Amarillo Mar. 7, 2007, pet. denied) (op. on reh’g)
(not designated for publication).  Yet Riddle is distinguishable from the instant
case.  In Riddle, not only was an
extensive internal investigation for fault of the incident conducted, but the
investigation also revealed disputed allegations of fault.  See id., at *4.  Further, in Riddle, the Amarillo court of
appeals also determined that the governmental unit had received formal written
notice under subsection 101.101(a).  Id., at *3.








            Appellees
further contend that the facts here are similar to Texas Tech University Health Sciences
Center v. Lucero, No. 08-05-00297-CV, 2007 WL 2215395 (Tex. App.–El Paso
Aug. 2, 2007, rule 53.7(f) motion filed). 
We disagree.  Lucero involved a medical malpractice lawsuit in
which a second doctor reviewed the work of the doctor who had performed the
procedure at issue.  Id., at *11. 
The two doctors undertook the review together within six months of the
time the procedure was performed.  Id. 
The El Paso court of appeals determined that this joint investigation by
the two doctors gave the doctor who performed the procedure subjective
awareness of his fault.  Id. 
Here, there was neither an investigation undertaken nor a subsequent
determination of fault within six months of the October 4, 2004 accident.

            In sum, there is no evidence that
TxDOT made any assessment of its fault within the six months following the
October 4, 2004 accident.  There is
further no evidence that TxDOT had the same incentive to investigate fault as
it would have had it received formal notice under subsection 101.101(a).  Therefore, we hold TxDOT did not have
subjective awareness of its fault as required to satisfy subsection
101.101(c).  TxDOT’s sole issue is
sustained.  

 

 

Disposition

            Having
sustained TxDOT’s sole issue, we reverse the trial court’s
judgment and render judgment
dismissing Appellees’ claims for want of jurisdiction.

 

                                                                                                     JAMES T.
WORTHEN   


                                                                                           Chief Justice

 

Opinion delivered January 23, 2008.

Worthen,
Chief Justice.

Hoyle,
Justice, concurring.

Griffith,
Justice, dissenting. 

 

 

            Because there is no evidence in the
record that TxDOT had a subjective awareness of its fault being the
cause of the injuries to Stephanie Anderson and Karen Bobo and the death of
Mariana Ramirez, I agree that TxDOT’s motion to dismiss for lack of
jurisdiction should have been granted. 
Because there is evidence that TxDOT had subjective awareness of its alleged
fault, I concur in the court’s judgment by separate opinion.

            Under the Texas Tort Claims Act, the
governmental unit is entitled to receive notice of a claim against it not later
than six months after the day the incident giving rise to the claim
occurred.  Tex. Civ. Prac & Rem. Code Ann. § 101.101(a) (Vernon
2005).  Notice need not be provided,
however, if “the governmental unit has actual notice that death has occurred,
that the claimant has received some injury, or that the claimant’s property has
been damaged.”  Tex. Civ. Prac. & Rem. Code Ann. § 101.101(c).  Recognizing the purpose of the notice
statute, the Texas Supreme Court held in 1995 that the actual notice provision
contained in subsection 101.101(c) requires a “governmental unit to have
knowledge of (1) a death, injury, or property damage; (2) the governmental unit’s
alleged fault producing or contributing to the death, injury, or
property damage; and (3) the identity of the parties involved.  Cathey
v. Booth,
900 S.W.2d 339, 340 (Tex. 1995) (emphasis added).

            If that were still the law today,
the investigating officer’s affidavit and testimony presented in this case
would be sufficient evidence to establish the three requirements for actual
notice under subsection 101.101(c), and TxDOT’s motion to dismiss for lack of
jurisdiction properly would have been denied by the trial court.  However, in 2004 the Texas Supreme Court
reexamined the actual notice requirement. 
Tex. Dep’t of
Criminal Justice v. Simons, 140 S.W.3d 338 (Tex. 2004).  In Simons, the court stated
that “[b]y holding in Cathey
that ‘actual
notice to a governmental unit requires knowledge of . . . the governmental unit’s
alleged fault producing or contributing to the death, injury, or
property damage,’ we did not mean that the governmental unit was required to
know that the claimant had actually made an allegation of fault.”  Id. (emphasis
added).  The court went on to say that, “[o]n
the other hand, Cathey cannot fairly be read
to suggest that a governmental unit has actual notice of a claim if it could or
even should have learned of its possible fault by investigating the
incident.”  Id. (emphasis added).  Even with these additional pronouncements of
the law, the investigating officer’s affidavit and testimony would satisfy
subsection 101.101(c).

            But the court went further in Simons, and dramatically changed the required
proof to satisfy subsection 101.101(c). 
Specifically, the court held as follows:

 

What we intended in Cathey by
this second requirement for actual notice was that a governmental unit have
knowledge that amounts to the same notice to which it was entitled by section
101.101(a).  That includes subjective
awareness of its fault, as ultimately alleged by the claimant, in
producing or contributing to the claimed injury.  If a governmental unit has this subjective
awareness of fault, along with the other information to which it is
entitled under section 101.101(a), then requiring formal, written notice in
addition would do nothing to further the purpose of the statute–which is, “to
enable governmental units to gather information necessary to guard against
unfounded claims, settle claims, and prepare for trial.” Id. (emphasis
added).

 

Subjective
awareness of alleged fault no longer is enough. 
Thus, after Simons, until a governmental
unit has subjective awareness of its fault, it does not have the level of
notice sufficient to satisfy subsection 101.101(c), even when it would not be
unreasonable to believe that the governmental unit was at fault.  Id.
at
348.

            The investigating officer’s belief
that TxDOT was responsible for the incident, while evidence of TxDOT’s
subjective awareness of alleged fault, is not evidence of its subjective
awareness of fault.  Further, TxDOT did
not investigate this incident until more than six months after the date of the
incident.[4]  Even when it did conduct its investigation,
TxDOT made it clear that it was not attempting to determine the cause of the
incident.[5]  The proof presented simply did not go far
enough to provide the trial court with jurisdiction based on subsection
101.101(c) as construed by Simons.  Therefore, I concur in the court’s judgment
reversing the trial court and granting TxDOT’s motion to dismiss for lack of
jurisdiction.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

 

            I
respectfully disagree with the majority that the notice TxDOT received from
Officer C.L. Hollis was insufficient to satisfy the requirements of Texas Civil
Practice and Remedies Code subsection 101.101(c) and would affirm the trial
court’s order denying TxDOT’s plea to the jurisdiction.  

            The issue
is whether TxDOT received actual notice of an October 4, 2004 accident, as
required by the Texas Tort Claims Act.  See
Tex. Civ. Prac. & Rem. Code Ann. §
101.101(c).[6]  Notice to TxDOT was required because the
basis of the suit is an alleged defect in the construction of US Highway 271
north of Gilmer, Texas.[7]  It is undisputed that Appellees did not give
TxDOT actual notice within six months of the date of the accident.  See id. § 101.101(a). 
However, it is also undisputed that C.L. Hollis, the Department of Public
Safety officer who investigated the October 4, 2004 wreck, went to the
TxDOT office in Gilmer and told various TxDOT employees about the wreck,
identified the injured people, and attributed the blame for the wreck on
vehicle hydroplaning due to a faulty condition of the roadbed.  I would hold that this provided TxDOT the
actual notice required under Section 101.101(c).  See id. § 101.101(c). 
Therefore, I respectfully dissent. 

 

Facts

            The
operant facts of this case are that on October 4, 2004, Appellees Stephanie
Anderson and Karen Bobo were traveling on U.S. Highway 271 in northern Upshur
County when they were involved in a collision with another vehicle.  Mariana Ramirez, the driver of the other
vehicle, was killed in the collision, and Anderson and Bobo were seriously
injured.  Appellees contend that the
collision was caused by water puddling due to an alleged defect in the
construction of the roadbed, specifically, an insufficient grade of slope of
the road surface.  As a result of the
insufficient slope, the standing water caused Ramirez’s vehicle to hydroplane
across the road into the oncoming traffic lane and collide with the vehicle
occupied by Anderson and Bobo.  Within
days of the accident, Officer Hollis reported his observations about the
accident to the local Gilmer office of TxDOT.

            The
Anderson and Bobo appellees filed suit against TxDOT and others on January 3,
2006.  TxDOT filed an answer.  Later, Jose Alicio Vasquez intervened, in
both his individual and representative capacities.  The suit was filed within the two year
statute of limitations applicable for personal injury actions,[8] but after the six month notice
period imposed by the Texas Tort Claims Act on litigants suing governmental
entities.  Therefore, in order to
continue their suit, Appellees had to avail themselves of substitutionary
notice; that is to say, they had to establish that within six months of the
accident, TxDOT received the required actual notice from another source
sufficient to meet the notice requirements of the Texas Tort Claims Act.

            TxDOT
filed a plea to the jurisdiction contending that Appellees had not provided
formal written notice of their claim as required by the Texas Tort Claims
Act.  Appellees contended that the
failure to give formal written notice of their claims was not fatal to their
claims due to the saving provision, section 101.101(c) of the Texas Tort Claims
Act.

 

Applicable
Law

            A
governmental entity must receive notice of a claim within six months of the
incident giving rise to the claim.  Tex. Civ. Prac. & Rem. Code Ann. §
101.101(a).  That notice must reasonably
describe the damage or injury, the time and place of the incident, and the
incident.  Id.  Due to the short time in which to give formal
notice imposed on those suing governmental units, claimants often find that
they must avail themselves of section 101.101(c), which provides that formal
notice is not required if the governmental unit receives actual notice of the
accident within six months.  The formal
notice requirement does not apply “if the governmental unit has actual notice
that death has occurred, that the claimant has received some injury, or that
the claimant’s property has been damaged. 
Id. § 101.101(c).  Actual notice to the governmental unit “requires
knowledge of (1) a death, injury, or property damage; (2) the governmental unit’s
alleged fault producing or contributing to the death, injury, or property
damage; and (3) the identity of the parties involved.  Tex. Dep’t of Criminal Justice v. Simons, 140
S.W.3d 338, 344 (Tex. 2004).  The Simons court
noted that the purpose of the notice requirement is “to ensure prompt reporting
of claims in order to enable governmental units to gather information necessary
to guard against unfounded claims, settle claims, and prepare for trial.”  Id. at 344.

 

            The Simons court
held that, as to the second requirement for actual notice, it is necessary that


 

a governmental
unit have knowledge that amounts to the same notice to which it is entitled by
section 101.101(a).  That includes
subjective awareness of its fault, as ultimately alleged by the claimant, in
producing or contributing to the claimed injury.  If a governmental unit has this subjective
awareness of fault, along with the other information to which it is entitled
under section 101.101(a), then requiring formal, written notice in addition
would do nothing to further the purpose of the statute–which is, “to enable
governmental units to gather information necessary to guard against unfounded
claims, settle claims, and prepare for trial.” 
[Cathey v. Booth, 900 S.W.2d 339, 341
(Tex. 1994) (per curiam)].  It is not
enough that a governmental unit should have investigated an incident as a
prudent person would have, or that it did investigate, perhaps as part of
routine safety procedures, or that it should have known from the investigation
it conducted that it might have been at fault. 
If a governmental unit is not subjectively aware of its fault, it does
not have the same incentive to gather information that the statute it designed
to provide, even when it would not be unreasonable to believe that the
governmental unit was at fault.

 

Simons, 140
S.W.2d at 347-48.  Ultimately, the court
held that “actual notice under section 101.101(c) requires that a governmental
unit have knowledge of the information it is entitled to be given under section
101.101(a) and a subjective awareness that its fault produced or contributed to
the claimed injury.”  Id. at
348.

 

            It has
been held that

 

actual notice
may be imputed to the governmental unit only when an agent or representative of
the entity charged with a duty to investigate and report to the governmental
unit receives the three elements of actual notice outlined in Cathey.  [citations
omitted]  But governmental entities have
actual notice to the extent that a prudent entity could ascertain its potential
liability stemming from an incident, either by conducting a further
investigation or because of its obvious role in contributing to the incident.

 

Nat’l
Sports & Spirit, Inc. v. Univ. of N. Tex., 117 S.W.3d 76, 80 (Tex.
App.–Fort Worth 2003, no pet.).  So the
question before us is:  Was Officer
Hollis’s notice to TxDOT sufficient to constitute actual notice pursuant to
Section 101.101(c)?

            I would
first note that Hollis, as a trained DPS highway patrol officer whose patrols
radiated from the small town of Gilmer, the county seat of Upshur County, would
likely be familiar with the administrative personnel structure of the local
TxDOT office and would thus know to whom he should report the defective
highway.  Hollis notified a number of the
people in the Gilmer TxDOT office, including the maintenance supervisor in the
Gilmer office at the time of the accident. 
He specifically told them the identities of the injured, the nature of
the injuries, and attributed cause for the accident to the defective nature of
the highway.  Hollis stated in his
affidavit as follows:

 

I am currently
employed as an officer with the Texas Department of Public Safety.  On October 4, 2004, I responded to and
investigated a car wreck on Highway 271 north of Gilmer in which Stephanie
Anderson, Karen Bobo, and Mariana Ramirez suffered injuries.

                Within days after October 4,
2004, I went to the Texas Department of Transportation office outside of Gilmer
and notified employees there, including the maintenance supervisor, of the
wreck.  I provided TxDOT with the
identities of the victims, the date of the wreck, and the wreck’s
location.  I notified them that there was
one fatality and that several others were seriously injured in the wreck.  I indicated that the wreck was caused, in my
opinion, by the faulty condition of the road. 
I informed TxDOT employees that in my opinion the roadway allowed water
to pool creating a dangerous condition and a potential for hydroplaning.

 

This was not
the first time I had notified TxDOT about problems on that stretch of roadway,
as I had worked many accidents there in the past during periods of
precipitation, and had been to that office on more than one occasion warning
them about the dangerous condition of the roadway.

 

            In a
deposition admitted at the hearing on TxDOT’s plea to the jurisdiction, Hollis
testified that the accident location was so dangerous that police officers
anticipated a wreck at the location due to hydroplaning whenever it
rained.  Hollis said that “the water
stood there in the road, it was–it would puddle up there, and people would hit
it and skid off the road.”

            As noted,
the Texas Supreme Court requires the governmental entity have knowledge of the
death or injury, the governmental unit’s alleged fault in producing or
contributing to the death or injury, and the identity of the parties
involved.  Simons, 140
S.W.2d at 348.  Clearly, Hollis’s notice
provided the required information.

            But the
crux of the issue is whether Hollis informed the right person.  That is, did Hollis inform a TxDOT official
whose duties include assessing TxDOT’s possible fault in producing or
contributing to the wreck?  Did anyone at
TxDOT, “an agent or representative of the entity charged with a duty to
investigate and report to the governmental unit receive[] the three elements of
actual notice outlined in Cathey”?  See Nat’l Sports & Spirit, 117
S.W.3d at 80.  Did the notice that Hollis
gave TxDOT cause TxDOT to prudently investigate to “ascertain its potential liability
stemming from an incident, either by conducting a further investigation or
because of its obvious role in contributing to the incident”?  See id.  That is to
say, did Hollis’s notice to the TxDOT Gilmer office give TxDOT “subjective
awareness of fault” as required by section 101.101(c)?

            Numerous
cases considering this issue have focused on whether (1) the notice the
governmental agency received was given to an agent of the governmental entity
(2) who conveyed the report of the accident (3) to the proper person within
that governmental entity who was charged with the responsibility to
appropriately investigate the accident in anticipation of possible litigation.  The El Paso court of appeals has
held that “[a]ctual notice may be imputed to the governmental unit only when an
agent or representative of the entity charged with a duty to investigate and
report to the governmental unit receives the three elements of actual notice
outlined in Cathey.”  Gonzalez v. El Paso Hosp. Dist., 940
S.W.2d 793, 795 (Tex. App.–El Paso 1997, no pet.).  In another case, the Austin court of
appeals noted that the fact that a governmental entity may know an accident
occurred, or even the filing of an accident report, does not constitute actual
notice.   But where the incident
triggered a separate investigation and report, one may impute actual notice to
the governmental unit.  City of San Angelo v.
Smith, 69 S.W.3d 303, 307-09 (Tex. App.–Austin 2002, pet.
denied).  In Smith, a
visitor to the city water treatment center fell down an open hole in the
presence of the plant superintendent. 
The superintendent quickly informed the plant’s risk manager, and the
city installed a guardrail around the hole the next day.  The city also prohibited the injured visitor
from taking pictures of the accident site. 
The court held that, taken together, those facts established and
constituted actual notice.  Id. at
308.  Similarly, where sheriff’s deputies
had a duty to investigate and report facts of the accident, the deputies’
knowledge would be imputed to the county and constitute actual notice.  Rosales v. Brazoria County, 764
S.W.2d 342, 345 (Tex. App.–Texarkana 1989, no writ).

            In another
case, actual notice was held not to be limited to a particular governmental
official, but could be imputed where an agent with notice has a duty to gather
facts and investigate, including some hospital employees.  Dinh v. Harris County Hosp. Dist., 896
S.W.2d 248, 252-53 (Tex. App.–Houston [1st Dist.], writ dism’d w.o.j.).  In a like manner, this court held that a fact
issue existed as to actual notice where an affidavit by the hospital director
showed that, in the same month a patient died, the hospital knew the patient’s
identity, that she died, and that its failure to examine and treat her
allegedly contributed to her death.  Johnson v. Nacogdoches
Hosp. Dist., 109 S.W.3d 532, 537 (Tex. App.–Tyler 2001, pet.
denied).  In yet another case, it was
held that

 

[a]ctual
notice to a governmental unit requires knowledge of: (1) a death, injury, or
property damage; (2) the unit’s alleged fault producing or contributing to it;
and (3) the identity of the parties involved. 
Cathey v. Booth, 900 S.W.2d 339, 341
(Tex. 1995).  The existence of actual
notice is a question of fact.  City of
Houston v. Daniels, 66 S.W.3d 420, 424 (Tex. App.–Houston
[14th Dist.] 2001, no pet.).  Actual
notice may be imputed to a governmental unit when its fault is obvious or an
agent charged with a duty to investigate and report to the unit receives notice
of the three Cathey elements.  See Crane County v. Saults, 101 S.W.3d 764, 769 (Tex. App.–El Paso 2003, no
pet.).  Thus, an incident that triggers
an investigation and accident report will impute such notice where there is
evidence to connect the accident to an action or omission by the governmental
unit such that it should have know of its potential culpability.  See id. at 769-70.

 

Angleton
Danbury Hosp. Dist. v. Chavana, 120 S.W.3d 424, 427 (Tex. App.–Houston
[14th Dist.] 2003, no pet.).

            By
contrast, however, the El Paso court addressed a case in which an inmate was
taken to the hospital after falling, and jailers reported the incident to the
sheriff.  Because there was no evidence
to connect the accident with an action or omission by the county, the court
held that the mere awareness of the accident was insufficient to constitute
actual notice.  Crane County v. Saults, 101
S.W.3d 764, 769-70 (Tex. App.–El Paso 2003, no pet.).  Similarly, another court held that a
governmental entity’s knowledge of its excavation project and resulting mud on
the road did not constitute actual notice of the entity’s alleged fault because
no evidence linked the mud to the accident. 
Renard
v. Park Ten Mun. Util. Dist., 794 S.W.2d 956, 958-59 (Tex.
App.–Houston [1st Dist.] 1990, no writ).

            Also, the
Dallas court of appeals held that actual notice was not imputed to a transit
district where there was no evidence that the bus driver conveyed any
information about an accident to any person with a duty to investigate and
report the accident.  Nor was there
evidence that information about a police investigation was conveyed to the
transit district.  Davis v. Mathis, 846
S.W.2d 84, 87-88 (Tex. App.–Dallas 1992, no writ).  Finally, the Fort Worth court of appeals held
that no actual notice existed where a TxDOT official who was called to the
accident scene did not report the accident to his supervisor and the police
report indicated the accident was caused by driver inattention.  Tex. Dep’t of Transp. v. Blevins, 101
S.W.3d 170, 173 (Tex. App.–Fort Worth 2003), appeal dism’d per curiam,
140 S.W.3d 337 (Tex. 2004).

 

Application
to Present Case

            During
preliminary discovery, Miles Garrison, resident engineer for TxDOT highways in
Upshur County and part of Camp County, was deposed.  Garrison testified that the TxDOT contracts
required an “02 slope.”[9]  Such a slope is recognized by highway
engineers as being necessary to properly drain the road of rainwater.  Though his testimony was somewhat truncated
on several issues due to the objections of the TxDOT attorney, Garrison
testified that he had received a DPS report regarding several accidents at the
location where the accident at issue occurred. 
Garrison identified an email from Kenneth Williams on June 2, 2005
relating to problems along Highway 271, and indicating that he intended to
provide an overlay on that section of road after preliminary work was
performed.  Garrison also identified a
June 22, 2005 email from Charles Russell, a TxDOT official in Austin concerning
wet weather accidents along that section of Highway 271.  Russell’s email specifically refers to the
October 4, 2004 accident.  After the June
22 email, Garrison went to the scene of the wrecks and measured the roadbed’s
cross slope.  The tests confirmed that in
some portions of the section of Highway 271 in question, the slope was much
less than .02.  In some places, the slope
was 85% less than the .02 slope recognized as necessary to drain the highways
of rainwater, and in other places, the slope was less than .01.  Garrison admitted that the goal and the
design plan by TxDOT is for a general slope of .02, and that anything less than
.015 would be undesirable.  Garrison also
stated that he detected places on the highway section in question that were far
below that requirement.  Garrison
confirmed that other testing had previously been performed by TxDOT, as
indicated by Williams’s previous awareness of the problem, and that the other,
more precise testing “compared reasonably well” with his test results regarding
the lack of slope of the roadbed.

            Interestingly,
Garrison admitted that he relied on DPS accident reports to indicate defective
highway conditions that he needed to investigate.  As Garrison stated, 

 

“I use the DPS
reports.  I rely  on them to tell me, you know, yes, there was
an accident at this location, it was a wet weather accident.  I gather the information from the DPS report,
and go out to that location to see if there is anything that we can do to
improve or to reduce the number of wet weather accidents.”  

 

But Garrison refused to “apply cause” to the accidents on
that stretch of the highway.  Garrison also
admitted that, as a result of his measurements and testing of the section of
Highway 271 at issue, he recommended that TxDOT install temporary warning
signs, and that TxDOT “correct and improve the cross slope.”  Garrison testified that, sometime after July
2005, TxDOT had placed the “coarse surface treatment” that Russell had
mentioned, which he considered a “good measure to start with,” but noted that “at
some point in the future, they would come back–maintenance would come back when
money and manpower and equipment were available and correct the cross-slope.”

            Garrison
also knew about this accident, having read about it in the newspaper.  Significantly, he also had been informed
about a request for information that had been made to the local TxDOT office
regarding the accident, although who made the request was not established.

            These
facts call to mind the rule that, if the incident triggers an investigation or
accident report, the court can impute actual knowledge to the governmental
entity.  A combination of Hollis’s
report, information that Williams obtained, and perhaps other information,
resulted in Garrison, on his own and at the behest of his supervisors in
Austin, testing the roadbed in question. 
Garrison’s testing confirmed what Hollis said about a lack of sufficient
slope on the pavement, and confirmed previous intervening TxDOT testing of the
roadbed.  And, although Garrison refused
to state that the insufficient slope of the roadbed caused the accident on
October 4, 2004, Hollis had previously supplied the causal element of the
actual notice requirement in his report to the Gilmer TxDOT office.

            I also
respectfully disagree with the majority regarding the timeliness of the
response of TxDOT as being crucial to the analysis.  And, I would submit, this disagreement with
the import of the dates of various TxDOT actions forms the crux of my dissent
from the opinions of my colleagues.  I do
not discern in Simons that there was a requirement that the governmental
entity’s response, including any investigations as to its potential liability
to the notice received, be completed within six months of the accident, only
that the notice be received within six months. 
TxDOT admitted it received Hollis’s notice within six months of the
accident.  And TxDOT began to investigate
the situation as would a prudent potential defendant.  That was sufficient to establish actual
notice.  Therefore, I would affirm the
order of the trial court.

 

 

                                                                                 SAM GRIFFITH 


                                                                                      Justice                                 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] See Tex. Civ. Prac. & Rem. Code
Ann. § 101.101(a) (Vernon 2005) (A governmental unit is
entitled to receive notice of a claim against it under Chapter 101 not later
than six months after the day that the incident giving rise to the claim
occurred.  The notice must reasonably
describe (1) the damage or injury claimed, (2) the time and place of the
incident, and (3) the incident.). 





[2] See Tex. Civ. Prac. & Rem. Code Ann. §
101.101(c) (Vernon 2005) (The notice requirement provided by subsection (a)
does not apply if the governmental unit has actual notice that death has
occurred, that the claimant has received some injury, or that the claimant’s
property has been damaged.).





[3]At the hearing on its plea to the jurisdiction, TxDOT
stated in argument that there are over 300,000 automobile accidents in Texas
each year.  It further stated that over
150,000 of these accidents occur on roads maintained by TxDOT.





[4] In Simons, the governmental entity
argued “that if by investigating an incident a governmental unit can open
itself to suit, it will have a perverse incentive to ignore every incident
until it receives formal notice of the claim.” 
Simmons, 140
S.W.3d at 348.  The court believed that
argument to be largely unfounded. 
Specifically, the court stated that any incentive not to investigate so
as to avoid liability would be slight since a governmental unit’s investigation
is not sufficient to acquire actual notice even when such investigation
discloses information that would reasonably suggest its culpability.  Id.  Nevertheless, the timing of TxDOT’s
investigation in this matter at least raises the possibility that the
governmental unit’s concerns raised in Simons were not “largely unfounded.”





[5] During the deposition
of Miles Garrison, a TxDOT engineer who investigated this area of the road, the
following exchange occurred:

 

Q             Okay.  And at least insofar as the area of the
roadway, .3 miles south of the intersection of Tulip Road and Highway 271, didn’t
you feel like you had discovered the cause of these wet weather wrecks that
were occurring?

 

Footnote continued.

 

A             No.

 

Q             Why is that?

 

A             I did not - - I did not - - I didn’t
find a cause.

 

Q             Well, you found an unacceptable
cross-slope, right?

 

A             My purpose - - the DPS - - I use
the DPS reports.  I rely on them to tell
me, you know, yes, there was an accident at this location, it was a wet weather
accident.  I gather the information from
the DPS report, and I go out to that location to see if there is anything that
we can do to improve or to reduce the number of wet weather accidents.  I do not look - - I do not, you know, there
is - - I do not, I guess, apply cause to that.





[6] A governmental entity is
entitled to receive notice of a claim not later than six months after the date
of the incident giving rise to the claim. 
The notice must reasonably describe (1) the damage or injury claimed,
(2) the time and place of the incident, and (3) the incident.  Tex.
Civ. Prac. & Rem. Code Ann. § 101.101(a).  This notice requirement does not apply if the
governmental unit has actual notice that death has occurred, that the claimant
has received some injury, or that the claimant’s property has been
damaged.  Id. § 101.101(c).





[7] The defect alleged is an
insufficient slope of the road that allowed rainwater to gather on the
road.  Some evidence suggests that this
could have been the cause of several wrecks involving vehicles hydroplaning on
the puddled water along the section of Highway 271 that is the focus of the
litigation.





[8] See Tex. Civ. Prac. & Rem. Code
Ann. § 16.003 (Vernon Supp. 2007).





[9] Evidently, the “02 slope”
or “02 cross-slope” refers to a two degree slope from the crown of the road
towards the edge of the road to drain rainwater from the roadbed.